**359 A.2d 689.**

## State *vs.* Edward J. Beaulieu.

JUNE 30, 1976.

Present: Paolino, Acting C. J., Joslin, Kelleher and Doris, JJ.

PAOLINO, J. This is an appeal from a judgment of conviction finding the defendant guilty on all counts of an indictment charging him with kidnapping, rape and committing an abominable and detestable crime against nature, to wit, oral copulation.

On June 17, 1973, prosecutrix was hitchhiking along Route 1 in Washington County near the intersection of Route 138. Her destination was a restaurant in the city of Warwick where she was employed as a waitress. The defendant stopped for her, agreed to transport her the entire distance to the restaurant and introduced himself to her as "Jim." As they proceeded northerly, prosecutrix mentioned to defendant that he had passed the correct exit from the highway, but defendant assured her that the next exit provided quicker access to their destination. After he passed this exit as well, defendant began to assault prosecutrix by grabbing her breasts. He threatened her with physical harm if she refused to cooperate with him by sitting next to him in the center of the front seat. After spending some time driving around with prosecutrix firmly in his grasp, defendant brought his car to rest in an isolated, wooded area of the city of Warwick. He continued to force his attentions upon her by performing oral copulation upon her and then by performing sexual intercourse with her. When they finished having intercourse, defendant drove prosecutrix to and left her off at her place of employment.

Prompted by the fact that defendant contacted her at the restaurant on June 20, 1973, asking if he could come by and have a drink with her the following day, the prosecutrix notified the police of the described incidents. The prosecutrix testified at trial that she assented to see defendant, but only as a means of aiding the police

in apprehending him. The defendant arrived at the restaurant at approximately 2 p.m. on June 21, 1973 and was placed under arrest by state policemen who were there awaiting him. He was immediately advised of his constitutional rights and transported to the Scituate Barracks of the state police. Upon reaching the barracks, defendant was again apprised of his constitutional rights and he signed a waiver-of-rights form. The defendant thereupon executed a written statement whereby he substantially admitted the allegations made by the prosecutrix adding only that the prosecutrix had consented to have intercourse with him. The statement made no mention of any acts of oral copulation.

Following the intial interrogation at about 7 p.m., defendant was subjected to a polygraph examination regarding a matter totally unrelated to the rape. This examination was administered in the same barracks but by a different officer than had conducted the original interrogation. At about 11 p.m. defendant was again questioned regarding the rape by the original questioning officer, that officer's superior, and the officer who had conducted the polygraph examination. At this time, defendant was not advised of his constitutional rights but express reference to the initial readings of said rights was made and defendant indicated that he was aware of his rights. At this latest interrogation, defendant made several incriminating statements including an admission of having committed a crime against nature (i.e. oral copulation) The total time between the initial reading of the *Miranda* warnings and the conclusion of the second interrogation was about 9 hours.

The grand jury returned a three-count indictment against defendant charging him with kidnapping, rape and committing a crime against nature. The matter came to trial before a justice of the Superior Court and a jury on

January 14-22, 1974. The defendant claimed at trial that he had indeed performed sexual intercourse with the prosecutrix but that she consented to the same. He denied, however, that he had committed oral copulation. This denial was contradicted at trial by the testimony of a state trooper that defendant admitted during the second interrogation to having performed such an act upon prosecutrix.

At trial, the state produced a witness who testified that a similar incident happened to her approximately 2 weeks prior to the rape for which defendant was being tried. She testified that on that date she was hitchhiking on the campus of the University of Rhode Island and that she was picked up by a man identifying himself as "Jim" whom she identified at trial as defendant. She further testified that defendant attempted to drive with her into an isolated area near the campus; that he demanded that she remove the knapsack that lay on the seat between them in order that she might sit closer to him; and that he assaulted her by grabbing her breasts. The witness testified, however, that she managed to open the car door and exit the vehicle as it moved slowly around a corner. At this turn of events, defendant left the scene and the witness walked to the nearest phone to summon help.

The jury returned verdicts of guilty on all three counts. The defendant filed a motion for a new trial which was denied on February 11, 1974.

The defendant's first assignment of error is that he was prejudiced by the admission of the testimony of the witness regarding the alleged incident that occurred 2 weeks prior to the rape with which defendant was charged. It is his position that evidence of prior criminal acts are not admissible at a trial where a defendant is accused of committing other separate acts except within the parameters of certain well-defined exceptions and that the facts of this case do not fall within any such exception

to the general rule. He argues that, under the terms of this court's decision in *State* v. *Russo,* 49 R.I. 305, 142 A. 543 (1928), admission of such testimony constitutes reversible error in that it deprives defendant of his right to have his guilt or innocence determined upon the offense charged and not upon evidence of prior unrelated acts. The defendant argues that, in depriving him of this right, the state had denied him the benefits of due process of law.

This court has had many occasions to recite the law in this area but the dispositive exposition of those principles was made in the case of *State* v. *Colangelo,* 55 R.I. 170, 179 A. 147 (1935) where the court stated:

> "[E]vidence of other and distinct criminal acts is generally prejudicial and inadmissible, yet it is generally conceded that evidence of other acts, representations and conduct at different times, even of a criminal nature, may be received when they are interwoven with the offense for which the defendant is being tried, or directly support a finding of guilty knowledge in the perpetration of that offense. Any circumstance that is incidental to or connected with the offense under investigation in such a way that it tends to establish guilty knowledge, intent. motive. design, plan, scheme, system, or the like, is proper evidence according to the overwhelming weight of authority." *Id.* at 173-74, 179 A. at 149.

Several policies have been specified as the underpinnings of the general rule that evidence of other distinct criminal acts is inadmissible. First, to convict a person by evidence or proof of another unrelated offense is simply against the policy of the common law. Second, it would impose an undue burden upon a criminal defendant to require him to defend against a charge other than the one he has prepared himself to defend. Finally, the rule tends to insulate the jury from prejudice against a criminal defendant and from confusion growing out of any un-

necessary multiplication or obfuscation of the issues. *State* v. *Wright,* 70 R.I. 39, 45-46, 36 A.2d 657, 660 (1944). If evidence is admitted in contravention of this rule and the defendant is thereafter convicted, there may be ample ground to order a new trial. *State* v. *Russo, supra* at 307, 142 A. at 544. Even in the event that an exception is allowed to show any one or more of the incidents of guilt enumerated in *Colangelo,* this court has held that it becomes incumbent upon the trial justice to accompany the admission of such evidence with caution to the jury. *State* v. *Wright, supra* at 46, 36 A.2d at 660.

In addressing ourselves to the circumstances of the case at bar, we note initially that the sole issue for the jury to decide with respect to the rape count was whether or not the prosecutrix consented to having intercourse with defendant. In the context of this isolated deliberation, therefore, it is for this court to decide whether the trial justice was correct in permitting a witness to testify regarding the previous incident involving defendant.

Applying the *Colangelo* guidelines, we must decide whether the earlier incident involving defendant and another young woman 2 weeks prior to his rape of the prosecutrix is so interwoven with the latter offense or is so directly supportive of a finding of guilty knowledge in the perpetration of the latter offense that an exception to the general rule is required. Thus, only in the event that this evidence of prior conduct tends to establish guilty knowledge, intent, motive, design, plan, scheme, system, or the like may such evidence be admitted.

We feel that, under the present circumstances, the suspect testimony should have been omitted from the record. We have already stated that, pertaining to the charge of rape, the solitary issue herein is whether prosecutrix consented. The defendant admits to having performed the act as described and, thus, questions of guilty knowledge

or intent are rendered irrelevant. As the premise was framed by another court, "[t]he fact that one woman was raped * * * has no tendency to prove that another woman did not consent." *Lovely* v. *United States,* 169 F.2d 386, 390 (4th Cir. 1948).

We are constrained to hold, therefore, that the testimony of the witness concerning a separate, though similar, offense 2 weeks prior to the offense charged should have been excluded by virtue of the general rule that such evidence is irrelevant, prejudicial and inadmissible. There is no exception to the rule from which the state may derive comfort in these circumstances. The prior conviction is therefore vacated and the case is remanded to the Superior Court for a new trial. Due to the highly prejudicial nature of the testimony, the trial shall cover all three counts of the indictment.

In view of the foregoing, it is not necessary that we address defendant's contention that the trial justice's cautionary instruction regarding the testimony of prior alleged criminal acts was insufficient or otherwise prejudicial.

In view of the fact, however, that a new trial has been mandated and questions of defendant's damaging statements and his admissions concerning the charge of oral copulation are likely to arise at the second trial, we will proceed to discuss defendant's second assignment of error. In short, defendant urges reversal of his conviction on the ground that the state police officers failed to inform him of his *Miranda* rights at the commencement of the second interrogation at 11 p.m. on June 21, 1973. The defendant does not dispute that said warnings were given to him twice before the police conducted the initial interrogation in mid-afternoon of the same day or that he signed two separate waiver-of-rights forms. One such waiver was executed at 2:30 p.m. and the other was

signed later on in conjunction with the polygraph examination.

The gravamen of defendant's claim in this regard is that he did not truly understand at the later interrogation that he had a right to remain silent. He urges here that the intervention of time and events, namely, the polygraph examination, rendered the first reading of the *Miranda* rights ineffectual. Thus, he claims entitlement to a new trial from which evidence obtained during the 11 p.m. interrogation would be excluded.

The Supreme Court of the United States has yet to rule on whether an accused who intelligently waives his constitutional right to remain silent may complain that the *Miranda* warnings were not repeated before subsequent interrogations.[1] A number of courts that have been confronted with this issue have held that *Miranda* v. *Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), does not mandate a prophylactic rule that an accused be advised anew of his constitutional rights each time custodial interrogation is resumed. *Commonwealth* v. *Bennett,* 445 Pa. 8, 15, 282 A.2d 276, 279 (1971). Virtually all courts reviewing the question have found that once a

---

[1]The Supreme Court recently decided the case of a robbery suspect, who had been arrested and advised in accordance with *Miranda* v. *Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and whose assertion of his right to remain silent was honored by police with a cessation of questioning. Several hours later. the suspect was again advised of his rights and questioned by another detective concerning an unrelated murder. The suspect made an inculpatory statement at this time which was later instrumental in convicting him of murder. The Supreme Court held that admission of this evidence did not violate *Miranda* in that his right to remain silent was scrupulously honored by the police officers. The second interrogation was conducted only after the lapse of a significant length of time and after a fresh set of warnings. *Michigan* v. *Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). This is clearly distinguishable from the case at bar where defendant chose initially to waive his right to remain silent.

suspect has intelligently waived his rights, there is no need to continually remind him of those same rights. *See, e.g., Biddy* v. *Diamond,* 516 F.2d 118, 122 (5th Cir. 1975). This is not to suggest, however, that the warnings, once given, are to be treated as if they had perpetual effect. Nor do we mean to imply that informing a suspect of his rights may be viewed as nothing more than a "perfunctory ritual" added to police procedures. *Gorman* v. *United States,* 380 F.2d 158, 164 (1st. Cir. 1967). Our sole concern in any matter regarding the procedural standard referred to as the *Miranda* warnings is whether, in fact, an accused was informed of and understood his constitutional right to remain silent and his continuing opportunity to exercise that right while in custody. *Miranda* v. *Arizona, supra* at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706-07.

Clearly, the requirement of the law in this respect is to examine each case on its own facts and to determine from the totality of circumstances whether the defendant, having already been advised of his constitutional prerogative to remain silent, voluntarily and intelligently waived that right. Among the circumstances to be considered in determining whether the original warnings have become diluted or stale are the following: the time elapsed between the warnings and the interrogation which elicited the damaging response; whether the warnings and interrogations were conducted in the same or in different locales; whether the warnings and/or initial interrogation were conducted by the same person or persons who conducted the suspect interrogation; the extent to which the statements made by the accused in the later interrogaion differ in any substantial respect from those made at the former; the apparent emotional, physicial and intellectual state of the accused at the later questioning. *Commonwealth* v. *Ferguson,* 444 Pa. 478, 481-82, 282 A.2d 378, 379 (1971); *see Brown* v. *State,* 6 Md. App. 564,

570, 252 A.2d 272, 276 (1969); *State* v. *McZorn,* 288 N.C. 417, 434, 219 S.E.2d 201, 212 (1975). This list is not intended to be exhaustive, but rather is offered as an aid in determining the ultimate question of whether the accused, with full knowledge of his rights, knowingly and intentionally relinquished them.

Turning our attention to the present case, the time lapse between the warnings and the second interrogation was approximately 9 hours. The warnings and both interrogations were conducted in the same police barracks and one of the officers who assisted in the second interrogation was the same officer who conducted the first. The defendant's responses during the second interrogation proved damaging to his defense especially with regard to the crime against nature because the written statement elicited from defendant in the afternoon made no mention of oral copulation. The transcript of defendant's own trial testimony indicates that at the commencement of the second interrogation he knew that he could exercise his prerogative and declined to answer any further questions. It is to be noted also that defendant had twice that same day executed waiver-of-rights forms indicating that he knew that he was under no compulsion to answer questions put to him while he was in custody. The only event that intervened between the two sessions was the polygraph test that was administered to defendant at 7 p.m. and that does not appear to have been an event of such magnitude that defendant's understanding of his rights would have been thereby interfered with.

It is our view of these facts that the trial justice committed no error in refusing to suppress the evidence of defendant's incriminating statements and was correct in his observation that when defendant responded to the questions asked of him at the second interrogation, he

was fully apprised of his right to remain silent and thus had intelligently waived said right.

Insofar as a new trial is required in this case by virtue of the erroneous admission of testimony regarding the defendant's prior conduct we do not reach the final issue raised by the defendant that his case was prejudiced by his being forced to reply to a question in a self-incriminating fashion.

The defendant's appeal is sustained, the judgment of conviction is vacated, and the case is remanded to the Superior Court for a new trial on all counts of the indictment.

Motion to reargue denied.

*Julius C. Michaelson*, Attorney General, *Judith Romney Wegner*, Special Asst. Attorney General, for plaintiff.

*William F. Reilly*, Public Defender, *Bruce G. Pollock*, Asst. Public Defender, for defendant.