Argued and submitted March 16, reversed May 11, 1981

# RAY CHARLES YOUNGBLOOD,
*Respondent,*
*v.*
# SULLIVAN,
*Appellant.*

## (No. 111,293, CA 19512)

628 P2d 400

Brenda J. Peterson, Certified Law Student, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, John McCulloch, Jr., Solicitor General, William F. Gary, Deputy Solicitor General, and Scott McAlister, Assistant Attorney General, Salem.

Vance M. Wolfe, Salem, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

**ROBERTS, J.**

Defendant was convicted of rape in the first degree and sodomy in the first degree. Through inadvertence the state public defender's office, which had agreed to file a notice of appeal in defendant's case, failed to do so in a timely manner. Defendant therefore brought this post-conviction proceeding pursuant to ORS 138.510. Defendant raised the arguments he would have asserted on appeal, i.e., that the admission of "other crimes" testimony by a female witness other than the victim was so prejudicial as to deny him a fair trial. At his original trial the court found that the probative value of the evidence outweighed the prejudice to the defendant. The court in the post-conviction hearing found that defendant was denied a fair trial because the prejudicial nature of the evidence outweighed its probative value, reversed the convictions and remanded the case for a new trial. We reverse.

The procedural posture of this case is somewhat irregular. We infer from the holding of the post-conviction court, since there was no record made of the post-conviction hearing, that defendant's argument there was based on the evidentiary question. His proper method of proceeding at post-conviction would have been to claim ineffective assistance of counsel on appeal as a denial of his right to the due process of law guaranteed him by the Fourteenth Amendment to the United States Constitution. The post-conviction court might then properly have ordered a delayed appeal pursuant to ORS 138.520. *Shipman v. Gladden,* 253 Or 192, 453 P2d 921 (1969); *Welch v. Gladden,* 253 Or 228, 453 P2d 907 (1969). The Supreme Court, in *Shipman,* declared the failure of counsel to file a notice of appeal, after agreeing to, was incompetence as a matter of law and a denial of due process. 253 Or at 203. There is in the record an affidavit from defendant's counsel on appeal confessing inadvertent failure to file a timely notice of appeal. Therefore, to avoid elevating form over substance, we consider defendant's claim as an ordered delayed appeal under ORS 138.520. The record of the trial court is before us, and the state acceded to this posture of the case at oral argument on appeal. The sole issue for our consideration is whether the admission of the evidence concerning a similar prior crime denied defendant a fair trial.

Because the details of the crime are at issue, we discuss the facts at some length. Defendant was convicted of committing first degree rape and first degree sodomy in an incident in Woodlawn Park in Portland. The victim testified that while she was walking through the park at about 1 p.m., defendant grabbed her from behind by the neck and threw her to the ground. He then walked her to the men's restroom in the park and into a restroom stall where, with her sitting on the toilet seat, he forced her to commit oral sodomy on him until he climaxed. Then, while she was still sitting on the toilet seat, defendant raped her. Afterwards, he walked her back outside and allowed her to leave. Defendant testified in his own behalf and maintained that the victim had not only consented to the sexual acts involved, but had initiated the encounter. He testified no force had been used.

On rebuttal, the state called another female witness who testified that about a month prior to the attack on the victim in this case, she had been attacked by defendant in a similar fashion in another Portland city park. This witness testified that at about 11 a.m. on the day of the attack she was at Duniway Park in Portland. She said she went into the women's restroom to change her clothes before a soccer match. While she was in one of the stalls, a man she identified at the trial as defendant ran into the restroom, climbed under the partition into the stall, grabbed her, threatened her and raped her. She testified at length as to the details of the crime: that defendant first performed oral sodomy on her while she was seated on the toilet seat, then raped her while she was seated and then, while she was still in a sitting position, forced her to perform oral sodomy on him until he climaxed.

■ It is a general rule that evidence of other crimes committed by the defendant is not admissible to prove commission of a subsequent crime. *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975); *State v. Gardner,* 225 Or 376, 358 P2d 557 (1961); *State v. Long,* 195 Or 81, 244 P2d 1033 (1952); *State v. Casey,* 108 Or 386, 213 P 771, 217 P 632 (1923). This is so even though the crime charged and the other unrelated crimes are similar. *State v. Pace,* 187 Or 498, 212 P2d 755 (1949). This rule tends to be strictly applied in cases of sexual crimes because of the particularly

inflammatory nature of such evidence. *State v. Urlacher,* 42 Or App 141, 144, 600 P2d 445 (1979); *State v. Sicks,* 33 Or App 435, 438, 576 P2d 834 (1978). Thus the Supreme Court in *Pace,* a case in which the defendant was accused of the rape of his daughter, held it was improper to admit evidence that defendant had previously had "sexual intercourse with two of his other minor daughters," stating the rule in sex crime cases to be "* * * that it is error to admit evidence tending to prove that the defendant committed similar offenses on a female other than the prosecutrix." 187 Or At 502.

In *Pace* the court found the evidence offered to be "highly prejudicial." Evidence is not rendered inadmissible, however, merely because it is prejudicial. As we noted in *State v. Sjogren,* 39 Or App 639, 593 P2d 1188 (1979):

> "Oregon courts generally treat the admissibility of other crimes simply as a special application of relevance analysis; hence, we first examine the evidence to determine whether it is probative of an issue in the case (other than the probability that defendant committed the crime charged because he committed another crime). We then balance this probativeness against the prejudicial effect the evidence may have. *See, e.g. State v. Manrique,* 271 Or 201, 205, 531 P2d 239 (1975); *State v. Schoen,* 34 Or App 105, 578 P2d 420, *rev den* 283 or 503 (1978)."

Decisions in this court since *Pace* have allowed evidence in sex crime cases of prior sexual acts between the defendant and others in two situations: when the two acts are so similar as to indicate a *modus operandi* which identifies the defendant, *State v. Sterling,* 15 Or App 425, 516 P2d 87 (1973), or when the issue is one of consent. *State v. Johann,* 34 Or App 363, 578 P2d 810 (1978).

In the case before us, defendant admitted the sexual acts with the victim so there is no question of identity, but defendant contends the acts were with consent. Even though *modus operandi* is usually used to establish identity, *see State v. Sterling, supra,* we conclude the evidence is admissible here to show a *modus operandi* which rebuts the defense of consent. *Modus operandi* is "a distinct pattern or method of procedure thought to be characteristic of an

individual criminal and habitually followed by him," Webster's New International Dictionary (3d ed 1976). The evidence in this case of the other crime and of the crime defendant is charged with established that defendant committed those acts in a way so unique as to constitute a signature. The time (midday), place (a stall in a restroom in a public park), position (victim seated on a toilet seat) and acts performed (oral sodomy to climax coupled with sexual intercourse) were unique and virtually identical.

The evidence of the other crime is probative on the issue of consent. Defendant's story that the victim in this case *consented* tends to be rebutted by evidence that defendant has had a *nonconsenting* encounter with another person in this strikingly singular way. The evidence was prejudical, but it was also extremely probative on the only real issue in the case. The evidence was properly admitted at defendant's trial.

Reversed.