Argued and submitted January 28, affirmed April 17, 1985

STATE OF OREGON,
*Appellant,*

*v.*

STEPHEN COLLINS,
*Respondent.*

(146,296; CA A31659)

698 P2d 969

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

David E. Groom, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The state appeals a pretrial order excluding evidence of a prior crime committed by defendant. ORS 138.060(3). The issue is whether that evidence is admissible under OEC 404(3) to prove the identity of the perpetrator of the murder involved in this case. We hold that the trial court did not abuse its discretion in excluding the evidence and affirm.

Defendant was indicted for the murder of Ruth Maury. A hunter discovered her body on November 13, 1982, in a clearing in a heavily wooded area 20 miles east of Salem. Except for a pair of cotton socks, the body was nude below the waist. Her blouse was pulled up to her neck and shoulders, and her brassiere was undone in the front. Her pants were around her neck and shoulders, and one pant leg was tied in a knot around her neck. There were abrasions on each of her wrists and a deep cut on the back of her head. A blood-stained rag and a pair of panties containing blood and seminal fluid were found nearby. An autopsy revealed that Maury had died of asphyxiation by ligature strangulation and that the head injury was severe enough to have rendered her unconscious, but was not fatal. Vaginal, rectal and oral swabs did not reveal the presence of semen.

Maury was last seen alive by a neighbor on November 9, 1982, at 1:30 p.m., walking from her apartment to a car with a man and a young child whom she was babysitting. Although the neighbor initially provided police with a description of the man, she later stated that she did not see him well enough to provide an accurate description. It is not clear from the parties' briefs whether the description she gave matched defendant. The child was discovered at 2:30 p.m. on November 9, wandering on a road near the location where the body was later discovered. Police questioned defendant about the murder, because he had lived in the same house with Maury and some other people for a few days. He was subsequently charged with her murder.

The state sought a pretrial ruling on the admissibility of the testimony of a woman whom defendant had been convicted of assaulting in California in 1977. Defendant had become acquainted with the woman on a cross-country bus trip. When they arrived in California, defendant offered to drive her to her boyfriend's home. She accepted, and they

went to the home of defendant's parents to get a car. Defendant was unable to obtain a car, so the woman called her boyfriend, who agreed to pick her up at the bus station. Defendant then suggested that they walk to his friend's house, where they could borrow a car to drive to the bus station. By this time, it was dark. On their way, defendant led the woman through a park. He abruptly punched her in the stomach, knocking her down. He then tied her wrists together with material he had brought with him, pulled her to her feet and led her into a group of trees. He forced her to lie on her back and gagged her with a pair of panty hose. He pulled her jacket off so that it hung around her wrists, pushed her sweater up and over her face and ripped open her brassiere in front. He removed her shoes, pants and underpants. He then committed oral sodomy and rape. The woman did not know whether defendant ejaculated. Afterwards, defendant cut the wrist restraints, allowed her to dress and later released her to meet her boyfriend. She promptly reported the crime, and defendant was later convicted of assault with intent to commit rape.

The state argued that the testimony was admissible to prove the identity of Maury's killer under OEC 404(3):

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, *identity,* or absence of mistake or accident." (Emphasis supplied.)

The trial court found that any similarities between the crimes were not of such a unique character as to earmark both cases as the handiwork of defendant and that dissimilarities existed between the two crimes. Finding that the probative value of the evidence was outweighed by the prejudice to the defendant, it excluded the evidence.

The scope of our review is to determine whether the trial court abused its discretion. *See State v. White,* 71 Or App 299, 692 P2d 167 (1984), *rev den* 298 Or 705 (1985). The first step in our analysis is to determine whether the evidence is relevant to establish some fact or inference that the state is entitled to prove, that is, a fact or inference other than defendant's bad character or his propensity to commit a crime. *State v. Hockings,* 29 Or App 139, 145, 562 P2d 587, *rev*

*den* 279 Or 301 (1977), *cert den* 434 US 1049 (1978). Here, the evidence is relevant; it is offered to prove the identity of Maury's killer.

■■ The next step is to determine whether the probative value of the evidence exceeds its inflammatory nature. *State v. Hockings, supra.* Four factors are relevant in that determination: (1) the need for the evidence; (2) the certainty that the other crime was committed and that defendant was the actor; (3) the strength or weakness of the evidence; and (4) its inflammatory effect on the jury. *State v. Hockings, supra,* 29 Or App at 147-48. The first two factors weigh in favor of admission of the evidence. The need for the evidence is great. The state argues that without it the case against defendant is built upon circumstantial evidence and conviction is unlikely. With respect to the second factor, it is undisputed that defendant committed the 1977 crime. The latter two factors, however, militate against admission of the evidence.

■■ When evidence of a prior crime is offered to prove identity, the prior crime and the crime for which the defendant is currently on trial must be so nearly identical in method as to earmark both as the handiwork of the defendant. *State v. Manrique,* 271 Or 201, 208, 531 P2d 239 (1975). The two crimes must be committed by the use of a novel means or in a particular manner, so as to provide a proper basis for the inference that the person who committed the other crime was the same person who committed the crime for which he is being tried. *State v. Manrique, supra,* 271 Or at 207. In this case, the evidence is not strong enough to permit such an inference.

■ The state relies on eight points of similarity. First, both victims were unmarried, white, 23-year-old women. That is not entirely accurate. Although Maury was unmarried, the woman defendant attacked in 1977 was married, but in the process of getting a divorce. Furthermore, the other similarities are so broad that they have no probative value. Second, the state submits that both attacks occurred after the victims had been lured from a safe residential setting to a secluded, wooded area and that both went willingly. That is speculative with respect to Maury. Although she was in no obvious distress when she left her apartment with the unidentified male, it is not certain whether she left willingly or

whether she had been coerced. Third, in each case a hard, but not fatal, blow was inflicted to stun the victim. Again that is based partly on speculation, because the motive of Maury's assailant is unknown. She was apparently struck on the back of the head with a hard, blunt object, but it is unknown whether the blow was intended merely to stun or to kill her. Furthermore, there is a significant dissimilarity in the severity of the blows delivered in each case. Fourth, each victim's hands were tightly bound behind her back by material which the assailant had brought to the scene. The doctor who performed the Maury autopsy stated that the abrasions on her wrists indicated that she had been bound. However, he also stated that he could not rule out the possibility that her wrists were merely gripped tightly by her assailant. Her wrists were not bound when her body was found. Fifth, both victims were disrobed in the same distinctive fashion. We are not convinced that the manner in which the victims were undressed was unique in a crime of this nature. It would seem to be in the nature of many sex crimes that the victim's clothes be removed in some fashion. The state introduced no evidence that would show that the manner in which these victims were disrobed was unique, when compared to other victims of sex crimes. Sixth, both victims were gagged. There was no gag in Maury's mouth when her body was found. A piece of cloth was found near her body. One might infer that it had been used as a gag, but that inference is weak, because there is no forensic evidence that it was ever in her mouth. Seventh, each victim was subjected to sexual intercourse and oral sodomy. Circumstantial evidence might support this purported similarity in the Maury murder, but there is no direct evidence to support it. Eighth, both victims were recent acquaintances of the defendant. That is true, although it appears that defendant may have known the woman he assaulted in 1977 better than he knew Maury. Again, however, we are not convinced that that is a unique feature of these two crimes.

Many of the similarities suggested by the state are based on inferences. Those that are not are either very broad or not sufficiently distinctive. Even if all inferences were drawn in favor of the state, the similarities, taken as a whole, do not render the crimes so nearly identical as to earmark them both as the work of the defendant. In addition there are factors which militate against admission of the evidence.

First, the length of time between the crimes—over five years—decreases the probative value of any similarities between them. *State v. Hockings,* 23 Or App 274, 280-81, 542 P2d 133 (1975), *rev den* (1976). Second, there is an obvious difference in the amount of violence in the two crimes. *State v. Hockings, supra,* 23 Or App at 281.

■ The last factor in the balancing process—the inflammatory nature of the evidence—also weighs heavily against admission. Evidence of a previous sex crime is highly inflammatory, and we have recognized that the general rule against admission of evidence of prior crimes tends to be strictly applied in cases involving sexual assaults. *Youngblood v. Sullivan,* 52 Or App 173, 176-77, 628 P2d 400, *rev den* 291 Or 368 (1981); *State v. Urlacher,* 42 Or App 141, 144, 600 P2d 445 (1979); *State v. Sicks,* 33 Or App 435, 438, 576 P2d 834 (1978).

Considering the weaknesses in the purported similarities between the two crimes, which dilute the probative value of the offered evidence, and the particularly inflammatory nature of the evidence, we conclude that the trial court did not abuse its discretion.

Affirmed.