Argued and submitted February 28, 1985, resubmitted In Banc May 7, reversed and remanded for new trial July 16, State's reconsideration and Mayfield's reconsideration denied October 10, both petitions for review allowed November 20, 1986 (302 Or 299)

STATE OF OREGON,
*Respondent,*

*v.*

JOHN EDGAR MAYFIELD,
*Appellant.*

(10-84-01096; CA A32196)

722 P2d 1250

Daniel N. Gordon, Eugene, argued the cause and filed the brief for appellant.

Brenda J. Peterson, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

NEWMAN, J.

Richardson, J., dissenting.

## NEWMAN, J.

Defendant appeals his conviction for sodomy in the first degree. ORS 163.405. He argues that the court erred in admitting testimony describing his alleged abuse of the victim's sister. We agree and reverse.

The grand jury indicted defendant for engaging in deviate sexual intercourse with the nine-year-old daughter of his then fiancee, between March 18 and June 18, 1983. In March, 1983, the victim, her mother, her three-year-old sister, her newborn brother and defendant moved into an apartment. The victim's mother and defendant were the parents of the victim's brother. Their relationship deteriorated after the child was born, and on June 18, 1983, defendant moved out of the apartment at the mother's request.

The victim testified at trial that, while defendant was living at the apartment, he had forced her to engage in sexual intercourse and oral and anal sodomy. She said that defendant had threatened that she would never see her mother again if she told anyone. On cross-examination, she admitted that, in a September, 1983, interview with Children's Services Division (CSD) caseworker Routzahn she had denied that defendant had sexually abused her.

Before beginning redirect examination, the district attorney advised the court, outside the jury's presence, that he intended to question the victim concerning defendant's sexual abuse of her sister. He argued that the evidence was relevant, first, to complete the picture of the crime by explaining to the jury what prompted CSD, the police and the victim's mother and grandmother to ask the victim whether defendant had abused her and, second, to explain why the victim ultimately reported that defendant had abused her after she had denied it initially. The court decided that the prejudicial effect on the jury outweighed the state's need to complete the picture of the crime but admitted the evidence, over defendant's objection, on the ground that the state's need to explain the victim's inconsistent statements outweighed the prejudice to defendant.

The victim testified before the jury that she had initially denied any sexual abuse by defendant, because she feared that, as he had threatened, she would not see her

mother again if she accused him of abusing her. She also stated that, when Routzahn interviewed her, defendant had moved and his sexual abuse had ceased. After that interview she learned that defendant was seeking to gain custody of her brother. She said that she then decided to tell her mother that defendant had abused her, because she feared that, because defendant had abused both her and her sister, he would also abuse her brother. During further questioning by the district attorney concerning defendant's abuse of her sister, she testified that she had seen her sister holding defendant's penis one evening in the bedroom she then shared with her. She further stated that her mother had told her that her sister's "bottom" was bloody and "all torn up" and that her sister had said "Daddy doctor" was responsible, apparently referring to defendant. The court cautioned the jury that it should consider the evidence concerning what the mother told the victim "only with the limited purpose of what may have been on the mind of the youngster and not for any purpose as to the truth that something else happened, or whether it might bear on the guiltiness of the Defendant, but only on the mind of the witness." The victim then testified that what had happened to her and her sister would make her feel "bad" if defendant and her brother were together.

During his case-in-chief, defendant introduced evidence to support his theory that, after the victim's mother learned in December, 1983, that he was seeking visitation rights or custody of his son, she had persuaded the victim to fabricate the story of abuse so that a court would not grant him visitation rights or custody. On rebuttal, the state offered Routzahn's testimony that, in September, 1983, the victim's sister had complained to her of defendant's abuse and that she had then told the mother that in her opinion defendant had raped and sodomized the victim's sister. The state's theory of relevance, which the court accepted, was that, if the victim's mother knew several months before defendant sought visitation that defendant had abused the victim's sister, she would have had no reason to ask the victim to fabricate allegations against defendant—the documented incident of abuse would be sufficient for her to defeat defendant's attempt to gain custody and visitation.

Defendant assigns as error that the court admitted the victim's and Routzahn's testimony concerning the abuse

of the victim's sister. We hold that the court committed reversible error in admitting Routzahn's testimony.[1]

■ Evidence of other crimes or bad acts committed by a defendant is generally not admissible to prove commission of a subsequent crime. OEC 404(3);[2] *Youngblood v. Sullivan,* 52 Or App 173, 176, 628 P2d 400, *rev den* 291 Or 368 (1981). If, however, the court finds that the evidence is relevant to an issue which the state is entitled to prove, then it must weigh the probative value of that evidence against its prejudicial impact. Because evidence of previous sex crimes may have a highly inflammatory effect on a jury, the general rule against admission of prior bad act evidence should be applied strictly in sex abuse cases. *See State v. Pace,* 187 Or 498, 212 P2d 755 (1949); *State v. Collins,* 73 Or App 216, 222, 698 P2d 969 (1985).

■ The state argues that Routzahn's testimony was admissible to rebut defendant's conspiracy charge. Although we agree that under this theory the state was entitled to offer evidence that in September, 1983, the sister had complained to Routzahn and that the mother was aware at that time of the complaint, only evidence of the facts that the complaint had been made and that the mother was aware at that time of the complaint were relevant. The details of defendant's alleged abuse of the sister were not. *See State v. Bovee,* 75 Or App 544, 548 n 4, 706 P2d 1005 (1985). Routzahn's testimony concerning the details of the abuse of the sister was both extensive and

---

[1] Defendant's objection to Routzahn's testimony was not specific, but the court denied him an opportunity to clarify it.

"[Defense Counsel]: I would object, then, on the grounds of relevance and I really would like to talk in camera to the Court.

"The Court: We have talked for two days in camera. I think I know what is on everybody's mind and mine. The objection is overruled."

He did not raise a hearsay objection. *See State v. Campbell,* 299 Or 633, 705 P2d 694 (1985); *State v. Harris,* 78 Or App 490, 717 P2d 242 (1986).

[2] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

graphic.[3] It was not probative of any fact at issue and was highly prejudicial.

The indictment charged defendant with abusing the victim; it did not charge him with abusing the victim's sister. The detailed evidence in support of the uncharged offense was undoubtedly highly offensive to the jury and was very likely to produce a sense of outrage which seriously affected the jury's ability to deliberate dispassionately. Indeed, the evidence on the uncharged offense was probably more offensive than any involving the charged crime. The jury in effect was invited to convict defendant of the charge in the indictment because he had also committed the additional offense that was not charged. That is precisely what the rule against other crimes evidence is designed to prevent. Although the fact of the sister's complaint was admissible, the admission of Rotzahn's testimony concerning the details of the abuse requires reversal. *See State v. Harris, supra* n 1, 78 Or App at 492.[4]

---

[3] Routzahn testified in depth about her interview with the victim's sister in September, 1983. She testified to the sister's use of anatomically correct dolls, which supported her conclusion that the sister had been raped and sodomized. The following is an example:

"[Routzahn]: In interacting with the dolls — first of all, she did have a female adult doll and a male adult doll — and the first thing she did was press the two dolls close together in a standing position.

"Because Stacey [the victim's sister] was so unverbal and a very fearful child, basically I asked her some questions as to what they were doing. She wasn't communicating verbally and I finally asked her if the daddy doll was huggy and kissy the *Stacey* doll and she sort of shook her head, yes; that was an affirmative answer.

"And, then, I asked her to show me what else the doll did. At that point she had the male doll at the vaginal point of the female doll and turned the doll around and put the penis next to the buttocks area and she did use the word 'peepee' for penis.

"I tried to question her as to her words for female body parts and she just didn't have any.

"As the interview progressed she continually manipulated the male penis with her hand and seemed really fascinated with it, sort of bounced it up and down with her fingers.

"Q: Did she exhibit some of the signs of an abused child?

"A. Definitely."

[4] The result would be the same if we were to employ the four-part approach set out in *State v. Collins, supra,* 73 Or App at 220. There we stated that:

"Four factors are elevant in that determination: (1) the need for the evidence; (2) the certainty that the other crime was committed and that defendant was the

Because the issue of the victim's testimony is likely to come up again on retrial, we discuss it briefly. The state argues that evidence of the victim's knowledge of defendant's abuse of her sister was relevant to rebut defendant's attack on her credibility, because it explained why she reported his abuse of her after telling Routzahn that he had not abused her. The victim testified that initially she had denied that she had been abused, because defendant was no longer living with her and her mother, but came forward when she learned that he was seeking custody of her brother. Because her concern for her brother was based both on defendant's abuse of her and on her knowledge of his abuse of her sister, the state argues, the evidence of her knowledge of defendant's abuse of her sister was admissible.

We agree that the victim's testimony that she believed that defendant had abused her sister would be relevant to rebut defendant's attack on her credibility. Under this theory, however, evidence of the details of the abuse would not be admissible.[5] Moreover, the probative value of the evidence must be weighed against the prejudicial impact and the testimony limited accordingly.[6]

Reversed and remanded for a new trial.

**RICHARDSON, J.,** dissenting.

Our scope of review is narrow. We review to determine whether the trial court abused its discretion in admitting the challenged evidence. *State v. Collins,* 73 Or App 216, 219, 698 P2d 969 (1985). The Supreme Court explained that standard of review in *State v. Madison,* 290 Or 573, 579, 624 P2d 599 (1981):

---

actor; (3) the strength or weakness of the evidence; and (4) its inflammatory effect on the jury."

Only the first and fourth factors are applicable here, because only the mother's awareness of the victim's sister's complaint is relevant. *See State v. Bovee, supra,* 75 Or App at 548. Here the inflammatory effect on the jury clearly outweighs any legitimate need for the evidence of the details of the abuse of the sister.

[5] Although the context is different, we believe that the guidelines set out in *State v. Campbell, supra* n 1, 299 Or at 646, for distinguishing the fact of a complaint from the details are appropriate for this case.

[6] We do not discuss defendant's third and fourth assignments of error. The third may not arise again on retrial; and the fourth is without merit.

" ' "* * * If (the trial judge) finds the evidence to have no probative value, he must exclude it. If, on the other hand, it does tend to establish a fact in issue, and no contrary considerations are present in the particular case, the evidence must be admitted. Between these two extremes, however, is an area in which further judgment must be exercised. If the evidence has some probative value, but also presents difficulties such as those mentioned above, the judge must determine whether the value of the evidence outweighs, or is outweighed by, the offsetting considerations. We sometimes call the exercise of this kind of judgment 'discretion.' Its exercise requires the judge to weigh the value of the evidence in light of all the circumstances of the particular case, and his conclusion, if it is reasonable, will not be disturbed on appeal. Precedent is of little value in reviewing such cases, because even when cases involve similar issues and similar types of evidence, the other factors which may properly influence the trial court's ruling are highly variable. We simply determine whether, on the facts of the particular case, the trial court's ruling was within the reasonable or permissible range. We need not determine whether his ruling was the only one possible. It may be that the record will support either admission or exclusion; if so, the trial court's ruling will be affirmed, regardless of which solution we would prefer." ' " (Quoting *Vandermeer v. Pacific N.W. Develop.,* 274 Or 221, 231, 545 P2d 868 (1976), and *Carter v. Moberly,* 263 Or 193, 200-01, 501 P2d 1276 (1972)).

*See also State v. McClure,* 298 Or 336, 692 P2d 579 (1984). I dissent because I would not hold, as the majority does, that the trial court's decision was unreasonable as a matter of law.

Routzahn's testimony was relevant to rebut defendant's theory that the victim's mother had persuaded the victim to fabricate the allegations against him. There is no question that her testimony regarding the alleged abuse of the victims younger sister was prejudicial. However, the trial court determined that the probative value of that testimony outweighed its prejudicial impact. The trial court is in the best position to make that determination. Its ruling was not patently unreasonable, and I would not disturb that ruling.

I would also hold that the trial court did not abuse its discretion in permitting the victim to testify concerning her knowledge of defendant's abuse of her sister. That testimony was relevant to rehabilitate the victim's credibility. The trial

court found that her credibility was critical, because the jury would essentially be asked to choose between her sworn testimony and that of defendant. Her testimony contained some detail concerning what she knew about defendant's abuse of her sister, but again I would not hold that the trial court's determination that the probative value of that testimony outweighed its prejudicial effect was unreasonable.

I would affirm.[1] Warden, Van Hoomissen and Rossman, JJ., join in this dissent.

---

[1]Defendant's other assignments of error are without merit.