**STATE**

**v.**

**Roger T. LAMOUREUX.**

**No. 91–432–C.A.**

Supreme Court of Rhode Island.

April 6, 1993.

Jeffrey Pine, Atty. Gen., Annie Goldberg, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Catherine Gibran, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

WEISBERGER Justice.

This case comes before us on the defendant's appeal from his conviction in the Superior Court on one count of first-degree sexual assault. We affirm the conviction. The facts of the case insofar as pertinent to this appeal are as follows.

The complaining witness, Cynthia,[1] testified that on the evening of April 10, 1987, she went alone to Sh–Booms, a Providence nightclub, at around ten o'clock. Cynthia sat at the bar and drank two glasses of wine, while looking around for her boyfriend. At about a quarter to twelve defendant, Roger T. Lamoureux, approached Cynthia and introduced himself as Roger.

The two conversed. During this conversation defendant told Cynthia that he was married but separated from his wife, and that he had a child. Cynthia mentioned to defendant that she too had a child but was not married. Cynthia told defendant that she was looking for her boyfriend and that she was out of work. When defendant responded that he knew someone who was looking for a secretary, Cynthia wrote her telephone number on a napkin and gave it to defendant. The defendant asked Cynthia to dance; she agreed. After the dance defendant purchased Cynthia a drink.

At closing time defendant asked Cynthia for a ride home because, he said, his friends had left him behind. Cynthia agreed. They left the club together and shared a brief kiss outside Cynthia's car. She then drove with defendant toward North Providence, stopping first at an Xtra Mart so that defendant could buy cigarettes. The defendant eventually directed Cynthia into the parking lot of an apartment complex in North Providence that defendant said was his residence. According to Cynthia, defendant up to this point had been acting like "a gentleman."

When Cynthia stopped the car, however, defendant's behavior changed radically. The defendant grabbed Cynthia, who is slightly built, by the shoulders and pulled her down on the seat. The defendant kissed Cynthia, who began to cry. The defendant told her to stop crying before he got "real mad." Cynthia recalled at trial that defendant was at that time "very demanding" and "harsh." The "tone of [defendant's] voice, his eyes," she said, put her in fear for her life.

The defendant demanded that Cynthia hold him because, he said, he had not been with a woman in six months. Cynthia complied, crying hysterically and asking defendant to let her go. The defendant then told Cynthia that she was "going to do one or the other," that she would either "lick it or leg it." The defendant ordered Cynthia to take off her clothes. Cynthia did so. The defendant removed his lower garments

---

1. This is not her real name.

while still on top of her, then inserted his penis into her vagina. After a time defendant removed himself. Cynthia did not remember defendant's ejaculating.

The defendant then put his clothes back on and commanded Cynthia to do the same. Cynthia dressed and told defendant that she wanted to go home. The defendant got out of the car. He asked Cynthia if she was going to call the police or her boyfriend. Cynthia responded no, that she just wanted to go home. Cynthia then drove to the house of her mother, who lived nearby. When Cynthia told her mother what had happened, her mother called the police. Cynthia was taken to the hospital that night.

The defendant did not testify at trial. During his bail hearing defendant admitted to having had intercourse with Cynthia but claimed that it was by consent, not by force or coercion.

The state called as its first witness Lucille.[2] Lucille, also a divorced mother, encountered defendant at Sh–Booms on the evening of April 1, 1987, nine days before complaining witness Cynthia. Lucille had driven to the nightclub at about nine thirty that night to meet a girlfriend. Before entering the club Lucille had "two puffs" of a marijuana cigarette. Once inside Lucille ordered a drink and waited. Sometime thereafter defendant approached Lucille at the bar and introduced himself as Roger. The defendant and Lucille conversed, speaking among other things of each other's children, marital status, and churchgoing habits. During this conversation Lucille wrote her telephone number on a cocktail napkin for defendant but told him that she was not promiscuous. According to Lucille, defendant was acting in a "very gentlemanly" manner.

At closing time defendant said that his friends had left him behind and asked Lucille for a ride home. Lucille told defendant that she did not usually do such things, but would do so if defendant agreed to behave himself. The defendant agreed, and the two left the club together.

2. This is not her real name.

In the car Lucille drove north on Mineral Spring Avenue toward North Providence. As the car neared where defendant said that he lived, defendant gestured and said that Lucille could let him off "anywhere to the right." Lucille, however, refused and drove on to the driveway of what defendant said was his home. In the driveway Lucille and defendant discussed going on a date. The defendant then leaned over and kissed Lucille, who pushed him away after a short time. The defendant then asked Lucille to "hug him." Lucille complied with a brief embrace but quickly pulled away. The defendant then grabbed Lucille's left breast. Lucille pushed defendant away and told him to get out of the car. The defendant responded by grabbing Lucille's hand and directing it toward his penis. Lucille pulled her hand away and yelled at defendant to get out of the car.

The defendant then "went crazy," according to Lucille; he began screaming at her and using obscenities. The defendant repeatedly told Lucille to touch him while Lucille screamed at defendant to get out of her car. The defendant had Lucille pinned between the two front bucket seats. Lucille managed nevertheless to get her left foot out the door and her hand on the horn. Soon thereafter a woman in a nightgown appeared at the side of the car. The woman said something to defendant, who got out of the car, swearing at the woman. Lucille thanked the woman, locked her doors, and drove away.

Lucille drove to her parents' house where she and her daughter were living. Lucille testified at trial that she did not tell her parents of the incident right away because her father had just returned from the hospital and she was worried that he would have another heart attack. A few days after the event she went to the police. Lucille also testified that she had received a swollen lip and a bruised wrist from her encounter with defendant.

Counsel for the state focused on Lucille throughout the trial, spending more time with her than with complaining witness Cynthia. Although defendant objected re-

peatedly to her testimony and made extensive offers of proof, the trial justice nevertheless allowed Lucille's complete testimony into evidence. The defendant was not charged with the Lucille assault in the indictment before the court. The trial justice gave the following instruction to the jury on the admissibility of prior-crimes evidence:

"You have heard evidence of other criminal activity in the form of [Lucille] when she took the stand and indicated to you what happened to her. I instruct you that this evidence, if accepted by you, has only been introduced and may only be used for the limited purpose to establish the defendant's intent, preparation, design, plan, scheme, system and absence of mistake or accident. It is not to be used to prove the character of a person in order to show he acted in conformity therewith."

The defendant advances three issues on appeal. First and foremost, he contends that the trial justice erred by admitting Lucille's testimony into evidence. In the alternative, defendant argues that even if evidence of the prior assault was admissible, the trial justice erred by not limiting the scope of Lucille's testimony. In addition, defendant argues that he was unconstitutionally denied the right to cross-examine the complaining witness on four occasions and that the trial justice committed further error by denying his motion for judgment of acquittal.

## I

## ADMISSION OF EVIDENCE OF PRIOR CRIME

The defendant argues that Lucille's testimony regarding the earlier assault by defendant is not admissible under Rule 404 of the Rhode Island Rules of Evidence. Rule 404(a) states that character evidence is generally not admissible to prove that the person in question acted in conformity with his or her character, except when raised by the accused or when used to rebut the defense of self-defense. Rule 404(b) reads as follows:

"*Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

The defendant argues in the alternative that if Lucille's testimony is admissible, the trial court nevertheless erred by failing to restrict its scope. By allowing the evidence of the previous assault to become the center of the state's case, the trial justice impermissibly infringed on defendant's right to a fair trial.

The defendant cites *State v. Jalette*, 119 R.I. 614, 382 A.2d 526 (1978), in support of his argument. In *Jalette* the defendant was charged with the indecent assault of his eight-year-old daughter. At trial the child's mother testified that her daughter had spoken to her soon after the subject assault of a previous incident of molestation by the defendant. The defendant objected to this testimony as inadmissible hearsay. The trial justice, however, admitted the declaration as a spontaneous utterance. *Id.* at 618, 382 A.2d at 529.

In our review of the matter we restated the general principle, now embodied in Rule 404(a), that "evidence which in any way shows or tends to indicate that the accused has committed another crime completely independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible." 119 R.I. at 624, 382 A.2d at 531. We gave two reasons for this rule: one, it is a corollary of the rule preventing the state from initiating the admission of character evidence, and two, it precludes the possibility that the jury might convict for the wrong crime. We also listed the exceptions to this rule: such evidence may be admissible "if it tends to establish material elements of the prosecution's case such as the accused's intent, motive, plan, or his partic-

ipation in a felonious scheme such as a conspiracy." *Id.* at 624, 382 A.2d at 532 (citing *State v. Beaulieu,* 116 R.I. 575, 359 A.2d 689 (1976)). These and other exceptions are now codified in Rule 404(b).

Even when admissible under one of the exceptions, a trial justice should receive collateral evidence with "great caution," and should give a specific instruction on its "limited purpose." 119 R.I. at 625, 382 A.2d at 532. Such evidence may not be admitted merely to show a defendant's criminal propensity or lewd disposition. "Evidence of other crimes is admissible only when it tends to show one of the exceptions to which we have previously alluded and only when that exception is relevant to proving the charge lodged against the defendant." *Id.* at 627, 382 A.2d at 533. *See also State v. Pignolet,* 465 A.2d 176 (R.I.1983) (evidence of a prior sexual assault upon victim other than the complaining witness allowed where the incident was not too remote, the other victim was the sister of the complaining witness, and the judge issued a limiting instruction).

We must therefore inquire into whether the offending testimony has any relevance toward proving the charge lodged against defendant. The state argued at trial that because Cynthia's testimony was not strong on the consent issue, the prosecution needed Lucille's testimony "to prove the defendant's intent, the lack of mistake or accident, his scheme or plan." The prosecutor stated candidly that without Lucille's testimony, the state could lose this case.

■ Mere weakness of the prosecution's case is insufficient reason to admit irrelevant and prejudicial evidence. As Rule 404(b) states, one may only admit evidence of other crimes, wrongs, or acts if that evidence fits one of the listed exceptions. In the case at bar we believe that two exceptions are applicable. The first exception is that of a common design or plan. An examination of the facts surrounding the Lucille incident indicates that the method of operation of defendant was substantially identical to that utilized in respect to the Cynthia incident. The meth-

od of gaining the confidence of the victim, the discussion of neutral incidents of common interest, the taking of the victim's telephone number for possible future business or social purposes, the request for a ride home made by defendant, followed by importunities that escalated in intensity to demands, all indicate a modus operandi that bore defendant's signature. Generally modus operandi is used to identify a defendant but may also be used when the issue of consent is raised. *Youngblood v. Sullivan,* 52 Or.App. 173, 177, 628 P.2d 400, 402 (1981). In the case at bar identity is not an issue because defendant does not deny the sexual encounter, but the issue of consent is raised since defendant claims that Cynthia consented to his sexual advances. Although Rule 404(b) does not list consent as an exception to the inadmissibility of evidence of prior crimes, the issue of consent in a sexual-assault case is closely related to the exception "absence of mistake" set forth in Rule 404(b). Implicit in a defendant's claim that a victim of sexual assault consented to his advances is the claim that at least he was led to believe that there was consent. Thus the issue of consent in this case is closely related to the issue of mistake.

■ In our prior cases we have pointed out that evidence of criminal activity on the part of the accused, other than the crime with which he or she is charged, is normally inadmissible because it is irrelevant to prove the charge save by its indication that the defendant is a bad man or woman who would therefore be predisposed to commit the crime with which he or she is charged. When evidence of prior crimes is relevant to prove an issue essential to the state's burden of proving the defendant's guilt of the crime with which he or she is charged, such evidence becomes admissible in spite of its prejudicial effect. *See State v. Wilshire,* 509 A.2d 444 (R.I.1986); *State v. Cline,* 122 R.I. 297, 405 A.2d 1192 (1979).

■ Since defendant claims to have engaged in intercourse with the victim with her consent, it becomes part of the state's burden to negate consent in order to prove that the sexual assault was committed with force or coercion. *State v. Talbert,* 416

So.2d 97, 100 (La.1982); *Rubio v. State*, 607 S.W.2d 498, 501 (Tex.Crim.App.1980).

This rationale may be inconsistent with our holding in *State v. Beaulieu*, 116 R.I. 575, 359 A.2d 689 (1976), wherein we said that "[t]he fact that one woman was raped * * * has no tendency to prove that another woman did not consent." *Id.* at 581, 359 A.2d at 692 (quoting *Lovely v. United States*, 169 F.2d 386, 390 (4th Cir.1948)). Upon reflection, we believe the validity of this statement may be open to serious question. In some situations the statement may be true, but it is scarcely exhaustive in all circumstances. In commenting on a similar proposition, the Texas Court of Criminal Appeals in *Rubio v. State, supra,* held that more recent cases require a rejection of the proposition that a prior rape is irrelevant when consent was the major issue in the case. We are persuaded that the commission of a recent prior crime in nearly identical circumstances by the same defendant with a different victim tends to be strongly probative on the issue of lack of consent. To the extent that *State v. Beaulieu* is inconsistent with this holding, it is no longer controlling.

Our admonition in *State v. Jalette* is that prior-crimes evidence "should be sparingly used by the prosecution and only when reasonably necessary." 119 R.I. at 627, 382 A.2d at 533. We are of the opinion that the nature of these two crimes made it necessary that the details of the prior crime be spelled out in order for its use to be effective. We are also of the opinion that the introduction of this evidence was reasonably necessary in order to negate the defense of consent and to prove beyond a reasonable doubt that defendant was not operating under the mistaken belief that consent had been given.

Consequently the trial justice did not err in admitting the testimony, and his general instruction in respect to prior-crimes evidence was adequate.

## II

### LIMITATION OF CROSS–EXAMINATION

The defendant contends that the trial justice erred in limiting his cross-examination of Cynthia. Specifically, defendant cites four lines of questioning that the trial justice precluded: (1) regarding Cynthia's relationship with her boyfriend and his marital status, (2) regarding the meaning of the phrase "lick it or leg it," (3) regarding Cynthia's victim's-compensation claim, and (4) regarding any telephone conversations Cynthia might have had with defendant after the incident in question.

■ Both the Federal and the Rhode Island Constitutions guarantee the defendant's right to a fair trial, which necessarily includes an effective cross-examination. "Effective cross-examination is an essential element of the presentation of a full and fair defense * * *. [T]he cross-examiner must be given a reasonable opportunity to explore and to establish any possible bias, prejudice, or ulterior motive that a witness may possess that might affect the witness' testimony." *State v. Veluzat,* 578 A.2d 93, 94–95 (R.I.1990). However, this right is not unlimited, not even to discover bias. *Id.* at 95. The trial justice has the discretion to restrict cross-examination when it is for an improper purpose, such as to harass, to annoy, or to humiliate the witness, or when the questions are irrelevant or of no probative value. *State v. Anthony,* 422 A.2d 921, 924 (R.I.1980). This court will not disturb the trial justice's exercise of discretion on the determination of relevance "except for clear abuse, and then only when such abuse constitutes prejudicial error." *Id.*

■ In the instant case defendant's counsel stated at trial that he was seeking to discover the marital status of Cynthia's boyfriend in order to find out whether Cynthia was dissatisfied with their relationship and would therefore want to have intercourse with defendant. The trial justice prohibited this line of questioning after preliminary hearing on the basis of the special limitations contained in Rule 412 of the Rhode Island Rules of Evidence. The defendant offered no other evidence to support this line of questioning, which is of

little probative value. We cannot say that the trial justice's rulings here constituted an abuse of discretion.

■ Regarding the phrase "lick it or leg it," defendant argues that this phrase was so unusual that it must have referred to a practice that the parties had discussed earlier. The trial justice denied further questioning on this subject on the basis of relevancy. Although this line of questioning might have contained some minimally relevant information, defendant's argument fails to convince us that he was prejudiced by this restriction.

As for Cynthia's victim's-compensation claim, defendant contends that he should have been allowed to recall Cynthia to question her on the issue of bias. We note again that the right to cross-examine is not unlimited, even in regard to bias. *Veluzat*, 578 A.2d at 95. We also remind defendant that his counsel stated, in the course of a colloquy among counsel and the trial justice, that "we would not like to recall the victim as to the victim's comp. question." The defendant's failure to take advantage of the opportunities afforded him at trial precludes him from raising this issue on appeal.

■ Regarding any telephone conversations between Cynthia and defendant after the evening of their meeting, defendant argues that such testimony would show a legitimate reason why defendant was still carrying the napkin with Cynthia's telephone number when he was arrested. The prosecution also sought such testimony in order to connect defendant to Cynthia. The trial justice restricted this line of questioning as outside the scope of direct examination and as irrelevant. We see no reason why such evidence would help defendant's case. On the contrary, this testimony appears to strengthen the prosecution's case. We see no prejudice and no abuse of discretion.

### III

### MOTION FOR JUDGMENT OF ACQUITTAL

The defendant contends that the trial justice improperly denied his motion for judgment of acquittal, that the evidence presented by the state did not satisfy its burden of proof.

The defendant was charged with first-degree sexual assault under G.L.1956 (1981 Reenactment) § 11–37–2, as amended by P.L.1986, ch. 191, § 1, which in pertinent part reads as follows:

"Definition of guilt of first degree sexual assault.—A person is guilty of first degree sexual assault if he or she engages in sexual penetration with another person * * * and if any of the following circumstances exist:

\* \* \* \* \* \*

(B) The accused uses force or coercion."

Section 11–37–1, as amended by P.L.1986, ch. 191, § 1 defines "force or coercion" as "when the accused does any of the following:

"(A) uses or threatens to use a weapon, or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon.

"(B) overcomes the victim through the application of physical force or physical violence.

"(C) coerces the victim to submit by threatening to use force or violence on the victim and the victim reasonably believes that the accused has the present ability to execute these threats.

"(D) coerces the victim to submit by threatening to at some time in the future murder, inflict serious bodily injury upon or kidnap the victim or any other person and the victim reasonably believes that the accused has the ability to execute this threat."

The trial justice found sufficient evidence to submit the case to the jury and denied defendant's motion.

Our standard in reviewing the denial of a motion for judgment of acquittal is clear. "When ruling on a motion for judgment of acquittal, the trial justice, and this court on review, must consider the evidence presented and the inferences which may be drawn therefrom in the light most favorable to

the prosecution. * * * Unless the evidence viewed in this light is insufficient to warrant a jury verdict of guilt beyond a reasonable doubt, the motion should be denied." *State v. Burke*, 522 A.2d 725, 734 (R.I.1987).

The evidence that the defendant engaged in intercourse with Cynthia is overwhelming. Thus the only disputed issue is whether the defendant used force or coercion. The fact that the defendant made no specific overt threats of bodily harm will not preclude a guilty verdict. In *Burke* we stated that implied threats may be as effective as, or more effective than, spoken threats. "[T]hreats of force need not be made in any particular manner in order to put a person in fear of bodily harm." *Id.* at 735 (quoting *State v. Rusk*, 289 Md. 230, 246, 424 A.2d 720, 728 (1981)). The defendant's command to "stop crying before I get real mad" and the facts that the defendant had Cynthia pinned down on the seat, that she was in fear of her life, and that she asked the defendant to let her go and he responded that she would do one or the other, "lick it or leg it"—all of these factors, taken together and in the light most favorable to the prosecution, could easily support a finding that the defendant coerced Cynthia into sexual intercourse. The trial justice therefore committed no error in denying the defendant's motion for judgment of acquittal.

For the foregoing reasons the defendant's appeal is denied and dismissed, the judgment of conviction appealed from is affirmed, and the case is remanded to the Superior Court.