Robert BASKIN, Petitioner–Appellant,

v.

**Richard CLARK, Superintendent, and Indiana Attorney General, Respondents–Appellees.**

No. 90–3699.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1991.

Decided Feb. 4, 1992.

---

Allen E. Shoenberger, Christopher Gibbons (argued), Loyola Law School, Chicago, Ill., for petitioner-appellant.

Wayne E. Uhl, Deputy Atty. Gen. (argued), Office of Atty. Gen., Federal Litigation, Indianapolis, Ind., for respondents-appellees.

Before WOOD, Jr.,* COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Robert Baskin appeals from the district court's denial of his habeas corpus petition filed pursuant to 28 U.S.C. § 2254. Baskin sought the writ arguing that an inculpatory statement admitted against him at trial was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He claims he had not waived his right to remain silent when the statement was made. The district court denied Baskin's petition holding that the statement in question was voluntary and was not obtained in violation of *Miranda*. We affirm the judgment of the district court.

### I. Background

After a jury trial, Robert Baskin was convicted of Burglary Class B in Indiana state court and sentenced to eighteen years in prison. Baskin did not testify at trial.

---

* Judge Wood assumed senior status on January 16, 1992, after this case was argued before the court.

The following are the circumstances surrounding the incriminating statement that is the subject of his petition.

On the evening of March 11, 1987, Baskin was arrested for the burglary of Ronald E. Cholazynski's home. Cholazynski apparently interrupted two men during the course of the burglary. Gunfire was exchanged, and the two burglars fled the premises. Police discovered Baskin a short time later lying in a nearby open field. Near the spot where Baskin was found lay a revolver which Cholazynski later identified as his own.

After being handcuffed, Baskin was put in the back of a police car and Corporal Cannoy read *Miranda* warnings to him. Cannoy then asked Baskin if he understood the warnings and Baskin replied that he did. Cannoy proceeded to ask Baskin his name and age. Baskin replied that his name was Robert Mason and that he was nineteen-years-old. Baskin then asked Cannoy about the whereabouts of several individuals. Upon arriving at the police station, Baskin stated that his name was really Robert Baskin. In response to subsequent questioning by Officer O'Brien, Baskin did not respond except to give his correct name. At the police station, Cannoy and Rutkowski searched Baskin's pockets. Inside, they found a high school ring, a wedding ring, a rifle clip, some cash and a wrench. It is at this point that Baskin made the statement at issue on this appeal: he claimed that the wedding ring had been given to him and that he had been wearing it for about a month. The evidence is inconclusive as to whether this admission was the product of questioning by the police or if it was offered spontaneously by Baskin. Both rings were later identified by Cholazynski as property taken in the burglary.

At trial, the court initially ruled against admitting Lieutenant Rutkowski's testimony on the ring statement into evidence for lack of proof that Baskin had been given *Miranda* warnings. However, after Cannoy testified that he had read the warnings to Baskin approximately a half hour before the search, the court reversed its earlier ruling and allowed the testimony.

Other evidence tying Baskin to the burglary includes an eyewitness identification by Cholazynski and the accomplice testimony of Michael Anderson, who pleaded guilty to charges stemming from the burglary. Baskin's conviction was affirmed by the Indiana Supreme Court. *Baskin v. State*, 546 N.E.2d 1191 (Ind.1989). The Indiana Supreme Court found that the incriminating statement was not obtained in violation of *Miranda*. *Id.* at 1192.

According to a supplemental case report, Cannoy wrote that after giving his real name, "Baskin refused to say anymore and was charged with Burglary Class B." Nonetheless, Cannoy testified at trial that Baskin never said he wanted to exercise his right to remain silent. A second supplemental case report signed by Officer O'Brien indicated that Rutkowski told her at the police station that "Baskin did not want to talk either." These supplemental case reports were not presented as evidence in the state courts. The district court refused to consider the supplemental case reports, and the plaintiff appeals that ruling.

## II. Analysis

■ Petitioner argues that this court need not give any deference to the state court's finding of a *Miranda* waiver since the state court did not make any *explicit* finding of waiver. However, "failure of the state court to expressly find that [the defendant's] waiver of his rights was knowing and intelligent is not fatal." *Perri v. Director, Dept. of Corr. of Ill.*, 817 F.2d 448, 452 (7th Cir.), *cert. denied*, 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987). Admission of a statement into evidence may be regarded as an implicit finding by the trial court that a defendant validly waived his *Miranda* rights. *See Smith v. Duckworth*, 856 F.2d 909, 912 (7th Cir.1988). The Indiana Supreme Court apparently accepted this implicit finding:

The record in this case discloses that appellant was given the usual *Miranda* warnings upon his arrest. His incriminating statement followed such warning; thus the State fully discharged its duty of proving beyond a reasonable doubt

that the statement was given freely and voluntarily as required under *Richardson v. State,* (1985), Ind., 476 N.E.2d 497. *Baskin,* 546 N.E.2d at 1192. The state courts in this case found that the petitioner knowingly waived his *Miranda* rights. It is well established in this circuit that state court determinations of the validity of *Miranda* waivers are subject to a presumption of correctness under 28 U.S.C. § 2254(d). *Perri,* 817 F.2d 448; *Bryan v. Warden, Indiana State Reformatory,* 820 F.2d 217, 219–20 (7th Cir.), *cert. denied,* 484 U.S. 867, 108 S.Ct. 190, 98 L.Ed.2d 142 (1987); *Mikel v. Thieret,* 887 F.2d 733, 739 (7th Cir.1989).

■ Whether a defendant made a voluntary, knowing and intelligent waiver of his *Miranda* rights is distinct from the issue of whether, under the totality of the circumstances, the challenged statement was involuntary. *Bryan,* 820 F.2d at 219. A court may find that a defendant made a valid waiver and yet still hold that a confession was involuntary. *See, e.g., Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 453, 88 L.Ed.2d 405 (1985) (confession obtained after an hour of deceptive questioning may not have been "voluntary" despite fact that the validity of the defendant's prior *Miranda* waiver was conceded). This ultimate issue of voluntariness is a question of law subject to *de novo* review. *Id.; Bae v. Peters,* 950 F.2d 469, 474 (7th Cir.1991). Baskin is not asserting that his statement was involuntary under the totality of the circumstances, but that he did not make a valid *Miranda* waiver, so the presumption of correctness applies.

■ In the record on appeal, Baskin seeks to include the two supplemental police case reports which were not before the state courts. He argued before the district court that because of the omission of the reports in state court, he did not receive a full and fair hearing and thus was entitled to a federal evidentiary hearing. The dis-trict court refused to consider the reports, and declined the request for a hearing.

■ The simple fact that the supplemental case reports were not presented to the trial court, without more, is insufficient to justify an evidentiary hearing. *See* 28 U.S.C. § 2254(d). It is not clear that the reports constitute newly discovered evidence. Baskin does not argue that the reports were unavailable to the defense during the state court proceedings, nor does he claim that the defense was not to blame for the omission. In his brief, he candidly admits that "[i]t is inexplicable why this evidence was not used at trial to impeach officer Cannoy, or refresh his recollection about Baskin's actions." (Petitioner's Brief at 27). At oral argument, Baskin's counsel attributed the failure to bring this evidence before the state court to ineffective assistance of counsel. Baskin further surmises in his brief that the state may have violated its duty to supply exculpatory material under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Yet, he offers no evidence to support either of these speculations.[1]

Baskin offers no case law to support admitting the reports, but relies instead upon the concept of "fundamental fairness." The amorphous concept of "fundamental fairness" is simply not enough to get around this procedural default. It does not fulfill the "cause and prejudice" standard set forth in *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Baskin has simply not presented any evidence justifying his failure to present the case reports in state court. The admission of the reports should properly be regarded as waived.[2] *See Burgin v. Broglin,* 900 F.2d 990, 997 (7th Cir.1990) ("Because of the failure of the petitioner to explain any valid reason for failing to present to the state court the evidence of the conversation ... allegedly overheard, we conclude that [the defendant] waived

---

1. Baskin does not claim ineffective assistance of counsel in his habeas corpus petition, so that argument is not properly before this court.

2. The appellees argue for the first time on appeal that Baskin failed to exhaust his state court remedies before attempting to have this new

evidence considered through a petition for habeas corpus. This argument is waived, however, as the appellees admit that they did not raise it before the district court. *Fagan v. Washington,* 942 F.2d 1155, 1157 (7th Cir.1991).

the opportunity to present this evidence in state court and, thus, is not entitled to federal habeas corpus relief.").

■ Viewing the record in the light most favorable to the government and applying a presumption of correctness to the state court's finding of waiver, we hold that the defendant made a valid waiver of his *Miranda* rights. Cannoy testified that he read *Miranda* warnings to Baskin approximately half an hour prior to Baskin's inculpatory statement as to the wedding ring. *See United States ex rel. Patton v. Thieret,* 791 F.2d 543, 547–48 (7th Cir.), *cert. denied,* 479 U.S. 888, 107 S.Ct. 284, 93 L.Ed.2d 259 (1986) (Although the lapse of time is one factor to be considered in determining the validity of a *Miranda* waiver, a lapse of forty minutes does not require that the warnings be repeated.). Cannoy testified that after reading Baskin his rights, he asked Baskin if he understood them, and Baskin responded that he did. There is no evidence in the record to contradict these facts. Baskin did not remain silent after these rights were read. He responded to questions about his name and age, and asked questions as to the whereabouts of certain individuals. According to Cannoy, the incriminating statement was made during a "back and forth conversation" between him and Baskin. There is also evidence in the record that Baskin's statement was spontaneous, and not the product of questioning by the police.

■ Even if this court were to assume that the ring statement was admitted in violation of Baskin's Fifth Amendment rights, the district court's decision should be affirmed if the error was harmless beyond a reasonable doubt. The issue then becomes whether "absent the constitutionally forbidden comments, honest, fair-minded jurors might very well have brought in

not-guilty verdicts." *Chapman v. California,* 386 U.S. 18, 25–26, 87 S.Ct. 824, 829, 17 L.Ed.2d 705 (1967).[3] Here the answer is clearly no. The evidence against Baskin was indeed overwhelming. He was found soon after the burglary in suspicious circumstances, near the scene of the crime, with property taken in the burglary in his pockets and a stolen gun nearby. He lied to the police about his name, was identified by the victim, and his codefendant implicated Baskin in the crime. It is hard to believe that without Baskin's statement regarding the wedding ring "honest, fair-minded jurors" would not have convicted him of burglary.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

**3.** The appellees urge the court to adopt the standard enunciated by Judge Easterbrook in *United States ex rel. Miller v. Greer,* 789 F.2d 438, 448–57 (7th Cir.1986) (en banc) (Easterbrook, J., dissenting), *rev'd sub nom. Greer v. Miller,* 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987). Judge Easterbrook argues that a *Miranda* violation should lead to habeas corpus relief only if

it "had substantial influence" on the course of the trial. However, the state can meet its burden in this case even under the stricter harmless error standard, therefore it is unnecessary to take this route.