10 F.3d 807
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eric Myron WATERS, Defendant-Appellant.
 No. 92-5705.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: March 16, 1993.
Decided: November 23, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.
 Lance D. Gardner, Gardner & Carter, for Appellant.
 Richard Cullen, United States Attorney, Sherrie S. Hardwick, Special Assistant United States Attorney, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER, PHILLIPS, and WILKINS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Eric Myron Waters appeals the district court's denial of his motion to suppress evidence and his resulting conviction. Finding no error, we affirm.
 
 
 2
 Following a jury trial, Waters was convicted of possession with intent to distribute cocaine base in violation of 21 U.S.C. Sec. 841(a)(1) (1988) (Count I), carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c)(1) (West 1976 & Supp. 1992) (Count II), and aiding and abetting the making of false statements to a licensed firearms dealer in violation of 18 U.S.C. Sec. 2 (1988) and 18 U.S.C.A. Sec. 924(a)(1)(A) (West 1976 & Supp. 1992) (Count III). The district court sentenced Waters to terms of twenty-seven months on each of Counts I and III to run concurrent with each other, and sixty months on Count II to run consecutive to the sentence imposed on Counts I and III. Waters timely appealed.
 
 
 3
 On February 7, 1992, Deborah Carter, a pre-school teacher and resident of Alexandria, Virginia, purchased two semi-automatic pistols for Waters in exchange for $80 worth of crack and $100 in cash. Waters accompanied Carter to the gun store, picked out the firearms, gave Carter cash to purchase the guns, and waited outside the store while Carter made the purchase. Carter testified that she had no intention at any time of keeping the two firearms for herself.
 
 
 4
 Later that same night, pursuant to a routine traffic stop on Route 1 in Alexandria, Sergeant Moser of the Fairfax County Police Department arrested Waters for operating a motor vehicle without a valid operator's license. Sergeant Moser impounded Waters' car and called for additional police units to conduct an inventory search of the car.
 
 
 5
 Officer James Cox of the Fairfax County Police Department arrived shortly after Waters' arrest and performed an inventory search of the car before it was towed away. That search revealed three separately packaged rocks of crack cocaine in a magnetic lock box, a loaded Jennings .22 caliber handgun, and additional ammunition.
 
 
 6
 Officer Cox advised Waters of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Waters waived his rights orally. No threats or promises were made.
 
 
 7
 Upon waiving his Miranda rights, Waters told Officer Cox that he had purchased the crack cocaine in Washington, D.C., and traded two rocks earlier for sexual favors from an unknown woman. He also stated that he had been living in Room 175 of the Virginia Lodge Motel on Route 1 in Alexandria. Officer Cox asked if he could search Waters' motel room, and Waters consented and produced a key to Room 175. Waters was then transported to the Fairfax County Police Station for processing on the traffic charges.
 
 
 8
 Pursuant to Waters' consent, Officer Cox searched the motel room and found a locked metal box, a locked briefcase, and a pager. Officer Cox telephoned Sergeant Moser at the police station, who asked Waters for consent to search the locked items. Waters refused. Officer Cox then arranged for a drug-sniffing dog to search the motel room, and the dog alerted to the locked metal box. Officer Cox then obtained a search warrant, opened the metal box and found a .380 semi-automatic pistol, .22 ammunition, .380 ammunition, two pagers, several razor blades, straws, and a large plastic baggie filled with many smaller zip-lock baggies.
 
 
 9
 Officer Cox then read Waters his Miranda rights again. Waters executed a written waiver of those rights. No threats or promises were made to Waters. Waters then admitted to purchasing a large rock of crack cocaine in Washington, D.C., and to cutting and packaging it into smaller amounts for distribution. Waters also stated that Carter had purchased the two handguns for him in exchange for a quantity of crack and cash.
 
 
 10
 On March 25, 1992, the complaint against Waters in Fairfax County was nolle prossed. Waters was then arrested and taken into federal custody by Special Agent Mahanand of the Department of Treasury, Bureau of Alcohol, Tobacco and Firearms (ATF) on March 23, 1992. After Waters was fingerprinted and booked, Agent Mahanand read him his Miranda rights, which Waters waived in writing. Waters did not request an attorney or make an attempt to assert his right to silence before or during the interview with Agent Mahanand. No threats or promises were made to Waters.
 
 
 11
 Waters told Agent Mahanand that he had given Carter two $10 rocks of crack on February 6, 1992, as prepayment for purchasing two firearms which she then bought for him the following day. Waters was aware that he could not purchase the firearms himself because he was not a Virginia resident. Waters also told Agent Mahanand that he had been living at the Virginia Lodge Motel and selling crack cocaine since December 1991.
 
 
 12
 Waters was indicted by a grand jury on the three counts on May 13, 1992. Waters moved to suppress the statements he made to Officer Cox and Agent Mahanand. Following a hearing, the district court denied the motion. The jury convicted Waters on all three counts in July 1992. This appeal followed.
 
 
 13
 The district court found that Waters' waiver of his rights was knowing, voluntary and not the product of coercion. Accordingly, the district court denied Waters' motion to suppress the statements he made to the police. The question of whether a waiver of Miranda rights is valid is one of fact that we review for clear error. Baskin v. Clark, 956 F.2d 142, 145 (7th Cir.), cert. denied, 113 S. Ct. 296, and 113 S. Ct. 109 (1992); Collazo v. Estelle, 940 F.2d 411, 415-16 (9th Cir. 1991) (en banc), cert. denied, 60 U.S.L.W. 3478 (U.S. 1992); see United States v. Gordon, 895 F.2d 932, 939 (4th Cir.), cert. denied, 59 U.S.L.W. 3247 (U.S. 1990). Courts consider the totality of the circumstances surrounding interrogation in assessing the validity of the waiver. Moran v. Burbine, 475 U.S. 412 (1986).
 
 
 14
 Waters' Miranda rights were properly delivered and waived (once orally, twice in writing) on each of the three occasions that he was interviewed. Waters presented no evidence that he was threatened or coerced in any manner before he waived his rights and agreed to speak with the police. The district court found that Waters, who has a twelfth grade education, understood his Miranda rights each time they were administered to him. Specifically, the district court found that Waters understood the charges against him, knew that he was not required to make any statement, and that he was advised of his right to assistance of counsel. The district court found that the police did not make promises to Waters in exchange for a confession. Finally, the district court found that Waters did not invoke his right to an attorney until after he made a statement to Agent Mahanand.
 
 
 15
 The factual findings of the district court are not clearly erroneous. Accordingly, we will not disturb them. United States v. Barnes, 909 F.2d 1059, 1067 (7th Cir. 1990). Waters presented no evidence of police threats or promises other than his own self-serving testimony. Thus, all three of the statements were constitutionally obtained, pursuant to a valid waiver by Waters of his Fifth and Sixth Amendment rights. See Patterson v. Illinois, 487 U.S. 285 (1988) (holding that Miranda warnings are sufficient to inform a defendant of his Fifth and Sixth Amendment right to counsel so that he may thereafter give a knowing and voluntary waiver of those rights). Therefore, we affirm the district court's denial of Waters' motion to suppress the statements.
 
 
 16
 Waters' second claim centered around his conviction for aiding and abetting an individual in providing a false statement to a firearms dealer. Waters contended that the district court erred in failing to dismiss Count III of the indictment because the Government failed to charge a criminal offense under 18 U.S.C. Sec. 924(a)(1)(A). That section makes it illegal for a person to knowingly make any false statement or representation with respect to information required to be kept in the records of a federally licensed firearms dealer.
 
 
 17
 Waters argued that since Deborah Carter filled out the required federal Form 4473 to purchase the guns, and not Waters himself, he cannot be charged with a violation of Sec. 924(a)(1)(A). Waters asserted that Carter bought the firearms for herself, and subsequently transferred them to Waters. Waters asserted that this conduct is not prohibited by Sec. 924(a)(1)(A). However, Carter testified at trial that she never intended to keep the two guns, and that Waters picked out the guns he wanted, gave her the money, and waited outside the gun store.
 
 
 18
 Many courts have upheld convictions for gun registration violations predicated on sham transactions. See, e.g., United States v. Hern, 926 F.2d 764 (8th Cir. 1991); United States v. Ortiz-Loya, 777 F.2d 973 (5th Cir. 1985). As the Sixth Circuit aptly stated, "[i]f sales such as this one were insulated from the law's registration provisions, the effect would be tantamount to a repeal of those provisions." United States v. Lawrence, 680 F.2d 1126, 1127 (6th Cir. 1982).
 
 
 19
 In reviewing a conviction based on a challenge to the sufficiency of the evidence, we determine whether, viewing all the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). The evidence presented at trial was sufficient to support the jury's finding that Waters knowingly aided and abetted Carter's false statement to a federally licensed firearms dealer.
 
 
 20
 Waters accompanied Carter to the gun store, selected the guns, gave Carter the cash to buy the guns, and waited outside while she made the purchase. When Waters was arrested later that evening, both of the firearms were found in his sole possession along with ammunition for both firearms. Waters even told Agent Mahanand that he knew he could not purchase the guns in Virginia himself because he was a resident of Washington, D.C. Thus, the jury reasonably found that Waters knowingly aided and abetted Carter in making false statements to the federally licensed firearms dealer.
 
 
 21
 Finding no error in the district court's rulings, we affirm Waters' conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED