SHAUNTAIE DENISE KOGER, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 35285

February 16, 2001

17 P.3d 428

*Morgan D. Harris,* Public Defender, and *Victor John Austin,* Deputy Public Defender, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

Before Young, Rose and Becker, JJ.

## OPINION

*Per Curiam:*

According to the testimony of witnesses as well as her own inculpatory statements, Shauntaie Denise Koger took part in the planning and commission of an armed robbery by acting as a lookout and getaway driver. A jury convicted Koger of conspiracy to commit robbery, burglary while in possession of a firearm, and robbery with the use of a deadly weapon. On appeal, Koger contends that the district court erred in admitting her statements given to the police because she had not been properly advised of her *Miranda* rights. We disagree and conclude that Koger was properly advised of her *Miranda* rights and that she knowingly and voluntarily gave inculpatory statements to the police.

### FACTS

On the morning of April 21, 1999, Koger, Ramein Ethridge, and two other men traveled to the corporate office of Bianca Shoes in two separate vehicles. Ethridge and one of the other men entered the office where they robbed an armed courier at gunpoint, taking his gun and a bag of cash deposits. The two men fled the office, jumped into a white sports utility vehicle, and sped out of the parking lot with Koger driving close behind in a small blue car.

Using license plate information and a description of the driver of the blue car provided by witnesses, the police were able to locate Koger and identify her as a suspect. During the course of their investigation, the police questioned Koger on three different occasions. The first interview occurred on April 22, 1999, when Detectives Harrison Mayo and Stephen Popp questioned Koger at Treasure Island, her place of employment.

Before questioning, Detective Popp admonished Koger of her *Miranda* rights, reading them from a card. Koger then answered the officers' questions. Koger told the officers that she was at home all day on the day of the robbery and that she had given her car to an individual named Jody in order to have its brakes fixed. Koger was, however, unable to give the officers Jody's last name, telephone number, or address. Koger also stated that she did not know where Bianca Shoes was located and denied any knowledge of the robbery. The detectives explained to Koger that she was not under arrest, but asked her to voluntarily accompany them to their office for further questioning. Koger complied.

At his office that same day, Detective Mayo conducted a second interview of Koger. Prior to questioning, Detective Mayo again admonished Koger of her *Miranda* rights. Then, referring to their first interview, Detective Mayo inquired whether Koger had understood her rights "the first time." Koger responded, "kind of." Detective Mayo asked what she meant by "kind of" and followed up by asking, "Do you understand them now?" Koger responded, "Yes, I do." At that time, Koger was also given a *Miranda* waiver form, which she read and signed.

After further investigation, Detective Mayo deemed it necessary to interview Koger again. On May 4, 1999, twelve days after the first interview, Sergeant Lori Crickett interviewed Koger at the Las Vegas Metropolitan Police Department offices. Sergeant Crickett did not advise Koger again of her *Miranda* rights because, as Sergeant Crickett testified, Detective Popp informed her that Koger had been previously advised of her rights. Furthermore, Koger expressly told Sergeant Crickett that she had indeed been so advised.

Contrary to her previous answers to the detectives, Koger now explained to Sergeant Crickett that, on the day of the robbery, Koger was at Tommy Rockers, a restaurant located in the same complex as Bianca's. She also admitted that she knew of the planning of the robbery and knew those involved but would not give their names. Then, later in the interview, Koger admitted that she had agreed to take part of the proceeds of the robbery in exchange for her participation as a getaway driver. Koger also admitted that she had followed the white sports utility vehicle on the day of the robbery as it left Bianca's and that she knew those riding in the vehicle.

Based on Koger's inconsistent and inculpatory statements, the testimony of co-conspirator Ethridge, and the testimony of other witnesses, the jury convicted Koger of conspiracy to commit robbery, burglary while in possession of a firearm, and robbery with use of a deadly weapon. This appeal followed.

## DISCUSSION

Koger asserts that she did not knowingly and voluntarily waive her *Miranda* rights and that the statements she made during her interviews with Detective Mayo and Sergeant Crickett should not have been admitted at trial.

The Fifth Amendment privilege against self-incrimination requires that a suspect's statements made during custodial interrogation not be admitted at trial if the police failed to first provide a *Miranda* warning. *See Miranda v. Arizona,* 384 U.S. 436, 479 (1966); *State v. Taylor,* 114 Nev. 1071, 1081, 968 P.2d 315, 323 (1998). In order to admit statements made during custodial interrogation, the defendant must knowingly and voluntarily waive the *Miranda* rights. *See Miranda,* 384 U.S. at 479; *Echavarria v. State,* 108 Nev. 734, 742, 839 P.2d 589, 595 (1992). We review the facts and circumstances of each particular case weighing the totality of circumstances to determine whether the *Miranda* warnings were properly given and whether the defendant waived his *Miranda* rights. *See Wyrick v. Fields,* 459 U.S. 42, 48 (1982); *Falcon v. State,* 110 Nev. 530, 534, 874 P.2d 772, 775 (1994).

Koger first claims that she did not understand her rights as given by Detective Mayo during the second interview and, therefore, that she did not waive her rights voluntarily. During that interview Koger responded that she "kind of" understood her rights as given during the first interview at Treasure Island. Prior to further questioning, Detective Mayo again advised Koger of her rights and inquired whether she understood them at that time. Koger then responded, "Yes, I do." Thereupon, Detective Mayo began the interview. The record shows no further indication of Koger attempting to stop the interview or otherwise invoking or misunderstanding her *Miranda* rights. In light of these facts, we conclude that Koger knowingly and voluntarily waived her *Miranda* rights before answering Detective Mayo, and thus the trial court properly admitted her statements.

Koger next argues that she did not waive her *Miranda* rights voluntarily prior to the third interview with Sergeant Crickett on

May 4, 1999, in which Koger admitted to taking part in planning and being present at the scene of the armed robbery. Koger's argument is based on the fact that, although Sergeant Crickett reminded Koger of the previous *Miranda* admonition, Koger could not have remembered her rights because the admonition had been given twelve days previous.

The issue before us is, in essence, whether "the original warnings have become diluted or stale." *State v. Beaulieu,* 359 A.2d 689, 693 (R.I. 1976), *abrogated on other grounds by State v. Lamoureux,* 623 A.2d 9, 14 (R.I. 1993). We addressed this issue once before in *Taylor v. State,* 96 Nev. 385, 386, 609 P.2d 1238, 1239 (1980), in which this Court stated that "[w]here the accused has been fully and fairly apprised of his *Miranda* rights, there is no requirement that the warnings be repeated each time the questioning is commenced." *Taylor,* however, is factually distinct because it addressed a three-hour lapse of time between the *Miranda* admonition and the subsequent interview. Moreover, *Taylor* did not discuss relevant factors other than time that should be considered when weighing the totality of the circumstances as required in a *Miranda* analysis.

Faced with this issue, the Supreme Court of Rhode Island outlined various factors to consider:

> the time elapsed between the warnings and the interrogation which elicited the damaging response; whether the warnings and interrogations were conducted in the same or in different locales; whether the warnings and/or initial interrogation were conducted by the same person or persons who conducted the suspect interrogation; the extent to which the statements made by the accused in the later interrogation differ in any substantial respect from those made at the former; the apparent emotional, physical and intellectual state of the accused at the later questioning.

*Beaulieu,* 359 A.2d at 693.

Certainly, the most relevant factor in analyzing whether a former *Miranda* admonition has diminished is the amount of time elapsed between the first reading and the subsequent interview. Most courts addressing the time factor have considered instances involving only a few hours. *See, e.g., United States v. Frankson,* 83 F.3d 79 (4th Cir. 1996) (two and one-half hours); *Evans v. McCotter,* 790 F.2d 1232 (5th Cir. 1986) (approximately three hours); *Baskin v. Clark,* 956 F.2d 142 (7th Cir. 1992) (thirty minutes); *Patton v. Thieret,* 791 F.2d 543 (7th Cir. 1986) (forty minutes); *U.S. ex rel. Henne v. Fike,* 563 F.2d 809 (7th Cir. 1977) (nine hours); *U.S. v. Boyd,* 180 F.3d 967 (8th Cir. 1999) (one and

one-half or two hours); *People of Territory of Guam v. Dela Pena,* 72 F.3d 767 (9th Cir. 1995) (approximately fifteen hours); *Ballard v. Johnson,* 821 F.2d 568 (11th Cir. 1987) (three to four hours).

Other courts have addressed time periods of one day or more. *See, e.g., United States v. Andaverde,* 64 F.3d 1305 (9th Cir. 1995) (one day); *Puplampu v. United States,* 422 F.2d 870 (9th Cir. 1970) (two days); *Maguire v. United States,* 396 F.2d 327 (9th Cir. 1968) (three days). The outer limit extends to one week as discussed in *Martin v. Wainwright,* 770 F.2d 918 (11th Cir. 1985),[1] and—under certain circumstances—two weeks as discussed in *Biddy v. Diamond,* 516 F.2d 118 (5th Cir. 1975).

In the above cases, the courts determined that statements made following the time interval were covered by the previous *Miranda* warnings and that the defendants could not successfully challenge the voluntariness of the statements based solely on the passage of time. We are not aware of any cases in which a court determined that the intervening time period was too long to invalidate the prior *Miranda* warnings.

The case at hand requires deliberation, however, because twelve days passed between Koger's April 22 interview with Detective Mayo, in which she was apprised of her *Miranda* rights, and her May 4 interview with Sergeant Crickett, in which Koger made further inconsistent and incriminating statements. Twelve days extends to the outer limit of the elapsed time allowed by courts previously facing this issue. Arguably, this case lies within the parameters of *Biddy,* which allowed an interim period of fourteen days. But in *Biddy,* the Fifth Circuit determined that the defendant knew of her *Miranda* rights because she had exercised those rights at various times during the two-week period. *See id.* at 123. Specifically, defendant Biddy had requested the presence of counsel twice and opted to remain silent during certain interviews, and was thus particularly familiar with her rights. *See id.* at 120-21. In contrast to *Biddy,* there is no evidence that Koger exercised her *Miranda* rights before her interview with Sergeant Crickett. Moreover, unlike defendant Biddy, Koger did not have contact with the police during the interim period.

Thus, the longest period allowed in the cases fairly analogous to the instant matter is one week as discussed in *Martin. See Martin,* 770 F.2d at 930. In *Martin,* the Eleventh Circuit determined that defendant Martin had been "fully warned, and knowingly and intelligently waived his *Miranda* rights" during a July 4 interrogation. *Id.* Before his confession seven days later on July 11, "Martin indicated that he still understood those rights." *Id.*

---

[1]*Opinion modified on other grounds by Martin v. Wainright,* 781 F.2d 185 (11th Cir. 1986).

Thus, the court concluded that additional "*Miranda* warnings on July 11 would have been needlessly repetitious" and that the "confession was not obtained in violation of *Miranda*." *Id.* at 930-31.

Considering the totality of the circumstances surrounding Koger's May 4 interview in light of the factors outlined above, we first note that the interviews were conducted in the same place, a factor favoring the State's argument that she remembered her rights sufficiently. On the other hand, the same person did not conduct the interviews. Additionally, Koger's answers given to Sergeant Crickett were not consistent with the answers she gave Detective Mayo. While this fact tends to show that Koger was then willing to cooperate, it may also support the conclusion that she was unfamiliar with her rights and felt compelled to comply. Finally, we have no testimony regarding the apparent physical, mental, or emotional state of Koger during the interview with Sergeant Crickett.

Two additional factors are relevant to the case at hand: the degree to which the defendant was reminded of her rights in the subsequent interrogation before questioning and the degree to which the defendant indicated she remembered and understood those rights prior to questioning. Considering these additional factors, we note that Sergeant Crickett inquired whether Koger had been advised of her *Miranda* rights before proceeding with the interview. In response, Koger indicated that she remembered and understood her rights. Considering this, we conclude that there was no need for Sergeant Crickett to fully advise Koger of her *Miranda* rights once again.[2]

## CONCLUSION

Weighing the totality of circumstances, we conclude that the police did not fail to properly admonish Koger by relying on a *Miranda* admonition twelve days old when the police reminded Koger of her rights and Koger acknowledged that she had been so advised. While twelve days may be too long under different circumstances, based on the facts before us, we conclude that Koger knowingly and voluntarily waived her rights.

---

[2]Koger raises three additional instances of error arguing the following: (1) that the district court abused its discretion by denying her motion for a continuance; (2) that the district court abused its discretion by allowing Ethridge to testify when the State failed to previously endorse him as a witness; and (3) that there was not substantial evidence to support the convictions. We have reviewed the record and conclude that they lack merit.