IN THE COURT OF CRIMINAL APPEALS

OF TEXAS





NO.74,060






QUINTIN PHILLIPPE JONES, Appellant


v.


THE STATE OF TEXAS





ON DIRECT APPEAL

FROM Tarrant COUNTY





 Keller, P.J., filed a concurring opinion in which Keasler, J. joined .


CONCURRING OPINION




 With regard to point of error one, I would find that there was no Miranda (1) violation.

I. Warnings given before the oral interrogation were sufficient


A. The issue


 Appellant was given Miranda warnings five different times before he made the statement he now
contends is inadmissible: (1) on September 11th by Detective Gates before an initial interview, (2) on
September 12th by a magistrate, (3) on September 12th by Gates before appellant accompanied him to
various locations to corroborate his alibi, (4) later on September 12th for a second interview by Gates, and
(5) on September 19th by a magistrate. Appellant's statement to Ranger Akin, of which he now complains,
was given just two days later, on September 21st. There is a threshold issue addressed only in passing by
the Court: whether the passage of time caused these five sets of warnings to lose their effectiveness. If they
were still effective when appellant gave his statement to Akin, then there was no Miranda violation. While
the United States Supreme Court has never addressed this particular issue, this Court has discussed the
issue once before, and this and similar issues have been addressed in numerous federal and state courts.

B. Texas authority


 In Ex Parte Bagley, the suspect was given Miranda warnings by arresting officers and by a
magistrate. (2) Subsequent warnings were given before a polygraph exam and before the complained of
statement, but it was not completely clear that these subsequent warnings were adequate. (3) Although this
Court ultimately decided that the warning immediately preceding the statement was adequate, we also
found that the warnings given six to eight hours earlier would have satisfied the dictates of Miranda. (4) In
connection with our discussion, we cited some out-of-state cases for the proposition that Miranda
warnings "are not to be accorded unlimited efficacy or perpetuity" but were also not automatically
extinguished by the mere passage of time. (5) We cited two out-of-state cases for the proposition that
Miranda warnings may be considered effective for statements given two or three days later. (6) We also
cited a previous Texas case dealing with Article 15.17 (7) admonishments for the proposition that warnings
may effectively cover a confession given six days later. (8)

C. Other jurisdictions


 As may be seen, Texas is not the only state to discuss the issue. Soon after Miranda was decided,
the First Circuit said, in Gorman v. United States, that automatically requiring a suspect to be warned on
multiple occasions misunderstands and trivializes the purpose for which the warnings are given:

[W]e do not think that the Miranda prescription, formulated to give threshold warnings of
fifth and sixth amendment rights at the earliest critical time in a criminal proceeding, must
or ought to be mechanistically duplicated when circumstances indicate the advisability of
requesting a second search. In the first place, advocacy of an automatic second-warning
system misunderstands and downgrades the warnings required by Miranda. Their
purpose was not to add a perfunctory ritual to police procedures but to be a set of
procedural safeguards "to inform accused persons of their right of silence and to assure an
opportunity to exercise it." (9)


The next year, the Illinois Supreme Court followed Gorman's lead. In People v. Hill, a police detective
questioned a suspect multiple times during a three hour period. (10) The suspect was warned on the first
occasion but those warnings were not renewed during the subsequent interviews. (11) The court held that
"once Miranda's mandate was complied with at the threshold of the questioning it was not necessary to
repeat the warnings at the beginning of each successive interview. To adopt an automatic second-warning
system would be to add a perfunctory ritual to police procedures rather than providing the meaningful set
of procedural safeguards envisioned by Miranda." (12) 

 To be sure, the time intervals between successive interviews in Hill were short, but other courts
would come to apply the principle to much longer time intervals. In Maguire v. United States, the Ninth
Circuit held that Miranda warnings remained effective for a statement made three days later:

Officer Hammond's warning, which was clearly adequate to meet the Miranda standards,
came three days before the interrogation of appellant by Agent Turnage; thus, even if the
warning given by Turnage was insufficient, the appellant could not claim he had not been
apprised of the Miranda warnings. (13)


In United States v. Springer, the suspect was orally Mirandized on May 16 and given written warnings
on May 18. (14) Though the Seventh Circuit believed the written warnings to be adequate, it wrote that "there
is precedent to uphold the confession" even if there had been no warnings on May 18. (15) 

 Some courts have held that even longer periods between the warnings and the statement are
permissible if the defendant is asked if he recalls the warnings. In Biddy v. Diamond, twelve days passed
between the initial Miranda warnings and the statement in question. (16) Before the questioning that resulted
in her statement, the suspect was asked if she remembered her rights, and she answered affirmatively. (17) 
In light of her affirmative response and the fact that she had previously exercised her right to counsel, the
Fifth Circuit held that the earlier Miranda warnings remained effective. (18) In Martin v. Wainwright, there
was a week-long interval between the Miranda warnings and the suspect's statement. (19) The court found
that it was sufficient that the suspect indicated, immediately before the subsequent interview, that he still
understood his rights. (20)

 Similar results can be found in cases from various state courts. The Alabama Court of Criminal
Appeals has found Miranda warnings to remain effective after an interval of three or four days, at least
where the suspect affirmatively indicated that he was still aware of his rights. (21) In addressing constitutional
requirements under Escobedo v. Illinois, (22) the Arizona Supreme Court analogized to Miranda cases and
held that an Escobedo warning (right to remain silent) did not need to be repeated for interrogations that
occurred twelve and thirty-six hours later. (23) In an Indiana case, the defendant had been advised of his
Miranda rights once in October and three times in November, but in January, at the urging of his girlfriend,
he told authorities he would make a statement if the prosecutor came within twenty minutes. (24) The
prosecutor came, and the defendant made a statement. (25) No warnings were administered at that time. (26) 
The Indiana Supreme Court held that the statement was not the result of interrogation, but even if it were,
the earlier warnings were sufficient in light of the defendant's clear recognition of his right to remain silent. (27) 
The Iowa Supreme Court has held that Miranda warnings remained effective for a statement made three
days after the warnings were given, where the suspect acknowledged that he had been advised of his
rights. (28) In a Missouri court of appeals case, the defendant had been advised of his Miranda rights on two
consecutive days. (29) Two days later, the defendant made a statement to the same detectives but without
further administration of Miranda warnings. (30) The court held that new warnings were unnecessary. (31) The
Missouri Supreme Court has since cited this case for the proposition that "[t]he mere lapse of time between
the receipt of Miranda warnings and the giving of inculpatory statements does not require the exclusion of
the statements." (32) In a Washington case, the defendant was advised of his Miranda rights in Canada. (33) 
Four days later, he was interrogated in Seattle. (34) Although he was given Miranda warnings, these warnings
were woven into the conversation. (35) The Washington Supreme Court held that it would not decide whether
the Seattle warnings were sufficient because the defendant had been admonished in Canada and his
conversation indicated that he was still aware of his rights. (36)

 While not confronting these longer time periods, other state courts have cited some of the above
cases for the proposition that a suspect need not always be re-advised of his Miranda rights. (37) And while
there are cases stretching all the way back to when Miranda was decided, there are recent cases
discussing the issue as well. In 1995, the Ninth Circuit reaffirmed Maguire's holding that a lapse in time
did not necessarily vitiate Miranda warnings. (38) That same year, the Delaware Supreme Court used a
balancing test to uphold the admission of a confession given a short time interval after Miranda warnings. (39) 
Citing a number of earlier cases from other jurisdictions, the Supreme Court of Wyoming held in 1999:
"The mere passage of time does not compromise a Miranda warning, and courts have generally rejected
a per se rule requiring automatic re-advisement following a time delay." (40) In 2001, the Supreme Court of
Nevada joined the chorus of jurisdictions holding that Miranda warnings are not automatically vitiated by
the passage of time. (41) In Kroger, the warnings were given twelve days before the statement at issue. (42) 
The Nevada court observed that other jurisdictions have upheld statements that occurred a day, a week,
or even two weeks after the administration of Miranda warnings. (43) Nevertheless, the court proceeded with
deliberation, due to the long time interval involved. (44) After considering the totality of the circumstances,
including the fact that the suspect indicated she remembered and understood her rights, the court held that
the warnings did not need to be repeated. (45)

 There are instances in which courts have held that Miranda warnings lost their effectiveness with
the passage of time. In Ex Parte J.D.H., the Alabama Supreme Court held that Miranda warnings were
not effective for a confession given sixteen days later. (46) The court recognized "a line of cases" from that
state's Court of Criminal Appeals "holding that once Miranda warnings have been given and the defendant
has made a knowing, intelligent, and voluntary waiver, a failure to repeat the warnings will not automatically
preclude the admission of an inculpatory statement." (47) The Supreme Court distinguished those cases by
observing that "[i]n none of those cases did the lapse exceed a few days without at least a reminder of the
warnings." (48)

 In Commonwealth v. Doe, the suspect, on a Friday, made some comments after being given his
Miranda warnings. (49) After being asked later that evening whether he wished to cooperate further, the
suspect asked for time to think about it. (50) On Monday, a police detective returned and, without giving
Miranda warnings, asked the suspect if he was ready to cooperate further. (51) The suspect again asked for
more time to think about it, but the detective launched into a discussion of protective custody and told the
suspect, "We would at least like to get the gun back." (52) In response to that statement, the suspect told the
detective that they already had the gun, as it was the same one they had taken from an individual arrested
for another robbery. (53) The Massachusetts Court of Appeals held that the suspect's reply should have been
suppressed because the detective failed to give a new set of Miranda warnings. (54) The court found that
the earlier warnings were ineffective due to the lapse of time and "the defendant's expression of his wish
for more time before deciding whether to cooperate." (55) 

 In Commonwealth v. Wideman, the Pennsylvania Supreme Court invalidated a confession taken
twelve hours after the administration of Miranda warnings. (56) Acknowledging earlier Pennsylvania cases
holding that an accused need not always be reinformed of his Miranda rights, the court set forth a five-factor balancing test for determining when previously given warnings lose their effectiveness. (57) The court
would consider: 

(1) the time lapse between the last Miranda warnings and the accused's statement; (2)
interruptions in the continuity of the interrogation; (3) whether there was a change of
location between the place where the last Miranda warnings were given and the place
where the accused's statement was made; (4) whether the same officer who gave the
warnings also conducted the interrogation resulting in the accused's statement; and (5)
whether the statement elicited during the complained of interrogation differed significantly
from other statements which had been preceded by Miranda warnings. (58) 


In holding the confession inadmissible, the court found that the time lapse of twelve hours was relatively
long, that the confession occurred in the same building but in a different room (warnings administered in
large homicide division office while statement given in small interrogation room), the officer securing the
confession was different than the officer giving the warnings, and the later statements were materially
different from earlier statements given immediately after the warnings. (59)

 Finally, earlier this year, the West Virginia Supreme Court invalidated a confession taken seven
days after the administration of Miranda warnings. (60) The defendant was given Miranda warnings three
times on September 2, 1999, but was interrogated on September 9, 1999, without any further warnings. 
The court discussed cases from other jurisdictions in which there was a significant interval between the
warnings and the confession - both those that upheld the confession and those that did not. (61) The court
"harmonized" what it saw to be potentially contradictory cases by applying a similar, but slightly different
balancing test from the one articulated in Pennsylvania:

[T]he following totality-of-the circumstances criteria should be considered: (1) the length
of the time between the giving of the first warnings and subsequent interrogation; (2)
whether the warnings and the subsequent interrogation were given in the same or different
places; (3) whether the warnings were given and the subsequent interrogation conducted
by the same or different officers; (4) the extent to which the subsequent statement differed
from any previous statements; and (5) the apparent intellectual and emotional state of the
suspect. (62)


The court then decided that the lapse of seven days was a significant enough time period that it alone, "as
a matter of public policy in West Virginia," was sufficient to require the re-administration of Miranda
warnings. (63)

D. Evaluation


 As may be seen from the above discussion, numerous jurisdictions have indicated that Miranda
warnings need not be administered immediately before the statement at issue. The Court distinguishes these
cases on the basis that, in some, the second, unwarned interrogation did not involve a separate officer, while
in others, the second interrogation did not involve a separate offense. While these are considerations, the
point is that the various courts have used a totality of the circumstances analysis, in which these are just
factors to be weighed. By treating these factors as dispositive, the Court seems to reject the totality of the
circumstances analysis employed by other courts. While there are factual differences between this case
and those cited, some of the facts in this case compare favorably to the others.

 Some cases have upheld statements taken after a substantial time interval - in one case, as long as
two weeks. The two day period in this case is significantly shorter than some cases in which the statement
was found to be admissible. And although the interrogation was conducted by a different person (belonging
to a different law enforcement agency), the statement was taken at the same facility at which appellant was
given at least one of his earlier Miranda warnings. While the complained-of statement involved different
events than earlier statements made immediately after Miranda warnings, there is no reason to believe
appellant suffered from any emotional state that would have impaired his understanding of the earlier-given
warnings. Moreover, appellant had already been warned on five different occasions and had been
continuously held in custody at the Tarrant County Jail from the first time he was given those warnings. If
appellant had forgotten about the earlier warnings, the magistrate's admonishments on the 19th served as
a reminder. Moreover, that latest warning, given by a neutral party a significant interval after the prior
interrogations were complete, should have disabused appellant of any notion that Miranda warnings
applied only to the earlier statements.

 Finally, we should consider the fact that appellant was warned, once again, before he signed his
written statement. Even if these warnings were not sufficient, by themselves, to render the written
confession admissible, they certainly reflect on the totality of the circumstances. If appellant was surprised
by these warnings, he could have spoken up then. But he did not. He could even have refused to sign the
statement despite his oral answers - such a refusal has occurred before. (64) That he signed the statement
is further indication that he knew what his rights were when he chose to participate in further interrogation.

II. Warnings given before signing of the written statement were sufficient


 I would also hold that the warnings immediately preceding appellant's signing of the written
statement rendered the statement admissible under Oregon v. Elstad. (65) The court distinguishes the present
case from Elstad on two bases: (1) Elstad involved mitigating circumstances surrounding the taking of the
first statement that are not present here (the first statement was obtained "almost inadvertently," there were
good motives for not giving warnings at the time, and there was some confusion over whether the suspect
was in custody), and (2) the present case involves a single, continuous interrogation. Neither of these
factors requires us to find a Miranda violation.

A. Law


 One problem with the first factor is the suggestion that a police officer's motive matters for the
purpose of determining a Miranda violation. Considering subjective motivations runs contrary to the
Supreme Court's use of objective tests for determining the existence of Miranda violations. (66) Moreover,
Elstad's holding does not appear to depend upon the motivations of the officers involved or even on
whether the Miranda violation was a result of objective mitigating circumstances. Rather, the decision
centers on the purposes of Miranda's prophylactic rule. (67) The rule sweeps more broadly than the Fifth
Amendment itself to provide effective protection against coercion. (68) While violation of the rule creates a
presumption of compulsion for purposes of admitting the evidence in the prosecution's case in chief, such
a violation does not mean that actual compulsion has occurred. (69) As a result, the Supreme Court has been
unwilling to extend this presumption of compulsion to other contexts - declining to extend it to
impeachment, the discovery of physical evidence ("fruits"), or the taking of subsequent, properly warned
statements. (70) "The absence of any coercion or improper tactics undercuts the twin rationales -
trustworthiness and deterrence - for a broader rule. Once warned, the suspect is free to exercise his own
volition in deciding whether or not to make a statement to the authorities." (71) Consequently, "[i]t is an
unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied
by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his
free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective
for some indeterminate period." (72) As to whether Elstad is applicable in cases like the one in this case,
Justice Brennan certainly thought so. He postulated just such a scenario as being one he was afraid
Elstad's holding would permit: 

 One police practice that courts have frequently encountered involves the withholding of
Miranda warnings until the end of an interrogation session. Specifically, the police escort
a suspect into a room, sit him down and, without explaining his Fifth Amendment rights or
obtaining a knowing and voluntary waiver of those rights, interrogate him about his
suspected criminal activity. If the police obtain a confession, it is then typed up, the police
hand the suspect a pen for his signature, and - just before he signs - the police advise him
of his Miranda rights and ask him to proceed. (73)


If he correctly interpreted the holding in Elstad, then the Miranda warnings in this case "automatically"
dissipated any taint. (74) And there is reason to believe his interpretation was correct, at least as it pertained
to the necessity of a break between statements. In discussing the question, the Court said:

 Of the courts that have considered whether a properly warned confession must be
suppressed because it was preceded by an unwarned but clearly voluntary admission, the
majority have explicitly or implicitly recognized that Westover's requirement of a break in
the stream of events is inapposite. (75)

 

 It might be argued that there is contrary language in Elstad, that could be seen as an rejecting
Justice Brennan's interpretation of the Court's holding. In what might have been intended as a response
to this passage, the Court says, "Justice Brennan not only distorts the reasoning and holding of our decision,
but worse, invites trial courts and prosecutors to do the same." (76) But even if the statement in Justice
Brennan's hypothetical is not automatically admissible, neither is it per se inadmissible. The Court indicated
that instead, a case-by-case approach should be used, with the focus being on whether the post-warning
statement is voluntary:

A handful of courts have, however, applied our precedents relating to confessions obtained
under coercive circumstances to situations involving wholly voluntary admissions, requiring
the passage of time or break in events before a second, fully warned statement can
be deemed voluntary. Far from establishing a rigid rule, we direct courts to avoid one;
there is no warrant for presuming coercive effect where the suspect's initial inculpatory
statement, though technically in violation of Miranda, was voluntary. The relevant inquiry
is whether, in fact, the second statement was also voluntarily made. As in any such inquiry,
the finder of fact must examine the surrounding circumstances and the entire course of
police conduct with respect to the suspect in evaluating the voluntariness of his statements. 
The fact that a suspect chooses to speak after being informed of his rights is, of course,
highly probative. (77)


And although the Court in our case cites cases holding Elstad inapplicable to a continuous interrogation,
other courts have held to the contrary. (78)

B. Evaluation


 But regardless of whether a break between statements is necessary for Elstad to apply, there is
one notable distinction in this case: Miranda warnings had been given before - five times before the oral
interrogation at issue, two of those by neutral magistrates, and the most recent being from a neutral
magistrate just two days before the interrogation. Under these circumstances, the trial court could have
reasonably inferred that appellant was not blindsided by the warnings given at the end of the oral
interrogation. The warnings should be deemed effective for Miranda purposes.

III. Conclusion


 Appellant was given Miranda warnings - five times before the oral interrogation and once before
he signed his written statement. If the purpose of Miranda is to ensure the voluntariness of confessions by
ensuring that the accused is aware of his rights, that purpose was fulfilled in the present case. 

 I concur in the Court's judgment as to point of error one and join the remainder of the Court's
opinion.

 KELLER, Presiding Judge

Date filed: November 5, 2003

Publish 

 
1. Miranda v. Arizona, 384 U.S. 436 (1966).
2. 509 S.W.2d 332, 335 (Tex. Crim. App. 1974).
3. Id. at 335-336.
4. Id. at 337.
5. Id. at 337 (comparing United States v. Hopkins, 433 F.2d 1041 (5th Cir. 1970), cert.
denied, 401 U.S. 1013 (1971) to United States v. Springer, 460 F.2d 1344 (7th Cir. 1972, cert.
denied, 409 U.S. 873 (1973) and Maguire v. United States, 396 F.2d 327 (9th Cir. 1968), cert.
denied, 393 U.S. 1099 (1969)).
6. Id. (citing Springer and Maguire).
7. Article 15.17, Texas Code of Criminal Procedure.
8. Bagley, 509 S.W.2d at 338 (citing Charles v. State, 424 S.W.2d 909 (Tex. Crim. App.
1967)).
9. 380 F.2d 158, 164 (1st Cir. 1967).
10. 233 N.E.2d 367, 369 (Ill.), cert. denied, 392 U.S. 936 (1968).
11. Id.
12. Id. at 131-132 (citing Gorman).
13. 396 F.2d at 331.
14. 460 F.2d at 1353.
15. Id.
16. 516 F.2d 118, 122 (5th Cir. 1975), cert. denied, 425 U.S. 950 (1976).
17. Id.
18. Id.
19. 770 F.2d 918, 930 (11th Cir. 1985), modified, 781 F.2d 185 (11th Cir. 1986), cert.
denied, 479 U.S. 909 (1986).
20. Id. at 930-931.
21. Johnson v. State, 324 So.2d 298, 302 (Ala. Crim. App.), cert. denied, 324 So.2d 305
(Ala. 1975).
22. 378 U.S. 478 (1964).
23. State v. Gilbreath, 487 P.2d 385, 386 (Ariz. 1971), cert. denied, 406 U.S. 921 (1972).
24. Jackson v. State, 375 N.E.2d 223, 225 (Ind. 1978).
25. Id.
26. Id.
27. Id.
28. State v. Russell, 261 N.W.2d 490, 492-495 (Iowa 1978).
29. State v. Brown, 601 S.W.2d 311, 314 (Mo. App, E.D. 1980).
30. Id.
31. Id.
32. State v. Groves, 646 S.W.2d 82, 85 (Mo. 1983).
33. State v. Blanchey, 454 P.2d 841, 845 (Wash., Dept. 2 1969), cert. denied, 396 U.S.
1045 (1970).
34. Id.
35. Id.
36. Id.
37. Herring v. Dugger, 528 So.2d 1176, 1178 (Fla. 1988); Watson v. State, 182 S.E.2d
446, 448 (Ga. 1971); State v. Boyle, 486 P.2d 849, 855-856 (Kan. 1971); State v. Peterson, 366
A.2d 525, 528 (Me. 1976); Moreno v. State, 504 P.2d 1241, 1243 (Okla. 1972); Commonwealth
v. Abrams, 278 A.2d 902, 904-905 (Pa. 1971); State v. Cydzik, 211 N.W.2d 421, 426-427 (Wis.
1973).
38. People of the Territory of Guam v. Pena, 72 F.3d 767, 769-770 (9th Cir. 1995); see
also United States v. Andaverde, 64 F.3d 1305, 1313 (9th Cir. 1995), cert. denied, 516 U.S. 1164
(1996).
39. DeJesus v. State, 655 A.2d 1180, 1195-1196 (Del. 1995).
40. Mitchell v. State, 982 P.2d 717, 722 (Wyo. 1999). 
41. Kroger v. State, 17 P.3d 428, 431-433 (Nev. 2001).
42. Id. at 432.
43. Id. at 431-432.
44. Id. at 432.
45. Id. at 432-433.
46. 797 So.2d 1130, 1132 (Ala. 2001).
47. Id.
48. Id.
49. 636 N.E.2d 308, 310 (Mass. App.- 1994).
50. Id.
51. Id.
52. Id.
53. Id.
54. Id. at 311.
55. Id. Although this decision is from an intermediate appellate court, it has been cited by the
Massachusetts Supreme Court with approval. Commonwealth v. Rankins, 709 N.E.2d 405, 408
(Mass. 1999).
56. 334 A.2d 594, 596 (Pa. 1975).
57. Id. at 598
58. Id.
59. Id. at 599.
60. State v. Deweese, 582 S.E.2d 786 (W. Va. 2003).
61. Id. at 797-798.
62. Id. at 799.
63. Id.
64. See Henderson v. State, 962 S.W.2d 544, 549 (Tex. Crim. App. 1997), cert. denied,
525 U.S. 978 (1998).
65. 470 U.S. 298 (1985).
66. See Stansbury v. California, 511 U.S. 318, 323-325 (1994)(a police officer's subjective
belief about custody is irrelevant to determining the applicability of Miranda).
67. Elstad, 470 U.S. at 306-307.
68. Id.
69. Id.
70. Id. at 307-309.
71. Id. at 308.
72. Id. at 309.
73. Id. at 329, 330 (Brennan, J. dissenting).
74. Id. at 320.
75. Id. at 310.
76. Id. at 318 n. 5 (Court's opinion).
77. Id. at 318 (emphasis added).
78. United States v. Esquilin, 208 F.3d 315, 319-321 (1st Cir. 2000)(time lapse between
interrogations relevant only if initial statement is actually coerced); People v. Mendoza-Rodriguez, 790
P.2d 810, 815 (Colo. 1990)(continuous interrogation subject to Elstad analysis); State v. Fleetwood,
824 A.2d 1061, 1066-1070 (N.H. 2003)(analyzing federal cases in applying more protective state
counterpart to Miranda rule; under totality of the circumstances test, no violation where suspect was
given an opportunity to take a break after Miranda warnings were administered but she did not do so). 
See also Davis v. United States, 724 A.2d 1163, 1169-1170 (D.C. App. 1998), cert. denied, 528
U.S. 1082 (2000)(recognizing that Elstad did not require break between statements).